Personnel Commission,
No. 5563.

THURSTON L. PEABODY

*v.*

STATE PERSONNEL COMMISSION.

Argued May 7, 1968.
Decided August 23, 1968.

*Gerald F. Giles* ( by brief and orally ), for the plaintiff.

*George S. Pappagianis,* Attorney General, and *Donald A. Ingram,* Attorney ( *Mr. Ingram* orally ), for the defendant.

LAMPRON, J. Appeal under RSA ch. 541, as authorized by RSA 98:15, from a decision of the Personnel Commission of the State of New Hampshire on appeal to it by a permanent classified employee of the State who was dismissed from service as a toll collector in the Turnpike Division of the Department of Public Works. Plaintiff was employed at the time of his dismissal, on May 20, 1966, at the Hampton toll station.

The reason for his discharge was set forth in a letter from John T. Flanders, Assistant Commissioner, which read as follows:

"For some time your supervisors have noted that the power had been stopped in your lane on numerous occasions so that the recording equipment failed to operate. On Tuesday morning, May 17, 1966, members of the State Police assisted your supervisors in performing a listing of vehicles processed through your

lane, and verifying the shortage of the collection. During this period it was again noted that the automatic recording equipment had been stopped. It is my conviction that this investigation was sufficiently conclusive to warrant action to terminate your employment, and justification for your discharge without further warning.

"You are advised that . . . you may within fifteen days, appeal to the Commission for review of this action. "

At the hearing on the appeal before the Personnel Commission, there was evidence that, at a toll booth lane which does not have an automatic collector, the attendant on duty operates a classifier which records in the administration building the type of vehicle passing through the gate. There is also a treadle which registers the number of axles going through and a counter which records each amount placed in the collection box. All of these recordings are made automatically by electricity. However if there is no current, the classifier, the treadle and the counter will not operate.

Because of the occurrence of repeated power shut-offs at certain times in these lanes, on or about April 25, 1966, a service technician employed by the owners of the automatic equipment, installed, at the request of an official of the Turnpike Division, an electric counter in each non-automatic collection lane at the Hampton toll station. This device recorded automatically any interruption in power in a particular lane. There was evidence that a switch located in a locked box in that booth was the only means of turning off the power in that lane except by cutting the heavy live wires carrying the electric current and this would involve removing the floor inside the booth.

After this installation was made, a daily record was kept of each man's shift as to whether the power had been off in the lane he operated. There was testimony that "after a few days, it was very noticeable that the power never was shut off in any of the lanes . . . with the exception of Mr. Peabody's lane and . . . [that of another attendant whose resignation was accepted]. " The records kept of shut-offs up to May 17, 1966 showed that the current had been off and on in the lanes worked by plaintiff, some 18, 8, 13, 10, 11, and 12 times on each of various days.

On May 17, 1966 two State Troopers arrived at the toll station supposedly looking for a Pennsylvania car, as told to the

attendants, but in fact, for the purpose of checking plaintiff's lane. Each Trooper kept an individual tally of the number and type of vehicle going through plaintiff's lane (South 2 lane) from 7:45 A.M. to 10:14 A.M. at which time the lane was closed off to traffic. The vault in which the money, tokens or credit cards are deposited as the vehicles go through the lane locked automatically as it was removed from the booth and later taken to the administration building. The total contained in it was $64.95. According to the figures recorded by the two State Troopers this amount was $11.70 short of the amount that should have been collected. During the about two hours that plaintiff was under surveillance the automatic recorder showed the power was shut off four times in the lane he was operating.

Plaintiff in his defense testified in part that he had had considerable difficulty with the two employees of the Authority who participated in this investigation and "I could see that they were persecuting against me and discriminating against me" in conjunction with a prior dispute. His counsel in his summation at the close of the evidence pointed out how impractical and foolish it would be for his client to want to take money from the State and how difficult it would have been to do so on the day he was being observed by the State Troopers. He argued also that the difference between the Troopers' count and the money in the collection vault resulted because someone other than the plaintiff removed funds from it while the vault was in their custody.

The Personnel Commission found that the proof adduced on behalf of the employer was significant and persuasive and made detailed findings on the main issues. It also found that plaintiff's defense "consisted of pure assertion and speculation, unsupported by any acceptable proof." He was the only witness presented in defense. The Commission concluded "on the weight of the evidence" that plaintiff's "guilt was established" and unanimously dismissed the appeal.

RSA 541:13 provides that on an appeal such as this "the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be *prima facie* lawful and reasonable."

The main reason alleged for plaintiff's dismissal was a shortage in the collection of tolls for vehicles passing through the lane of which he was in charge the morning of May 17, 1966. If this were a criminal prosecution, the State would have had the burden of proving this charge beyond a reasonable doubt. *State* v. *Amero,* 106 N: H. 134, 136. However, in a proceeding like this one, the existence of a shortage need only be proved by a preponderance of evidence. *Greenberg* v. *Aetna Insurance Company,* 427 Pa. 494; *Commerce Union Bank* v. *Midland National Ins. Co.,* 53 Ill. App. 2d. 229. See *Hitchcock* v. *Munger,* 15 N. H. 97.

As a fact-finding tribunal, the Commission was at liberty to resolve any conflict in the evidence and to accept or reject such portions of the testimony as it saw fit. *N. H. Milk Dealers' Ass'n.* v. *Milk Control Board,* 107 N. H. 335, 343; *White Mountain Power Co.* v. *Whitaker,* 106 N. H. 436, 439. The Commission's findings and conclusions are entitled to great weight and cannot be set aside lightly. *Household Goods Carriers* v. *Ouellette,* 107 N. H. 199, 200. On the record before us, we cannot say that the dismissal of plaintiff's appeal was "unjust or unreasonable." *Plymouth Fire District* v. *Water Pollution Commission,* 103 N. H. 169, 173.

*Appeal dismissed.*

All concurred.