Personnel Commission
No. 7676

JOHN B. O'LOUGHLIN

v.

NEW HAMPSHIRE PERSONNEL COMMISSION

December 16, 1977

*Orr & Reno,* of Concord (*Mr. Charles F. Leahy* orally), for the plaintiff.

*David H. Souter,* attorney general and *David W. Marshall,* attorney (*Mr. Marshall* orally), for the defendant.

BOIS, J.    Appeal pursuant to RSA ch. 541 from a decision of the New Hampshire Personnel Commission (the "commission") upholding plaintiff's discharge from his classified position of supervisor, bureau of title and anti-theft, division of motor vehicles, department of safety (the "bureau"). Plaintiff also appeals from the denial of his motion for a rehearing. For the reasons which follow we affirm both decisions.

The facts, briefly stated, are as follows: Plaintiff's responsibilities included supervision of the filing and issuance of certificates of title to New Hampshire motor vehicles. During July of 1975, David Paveglio, a title inspector with the bureau, while working on an independent investigation with the Federal Bureau of Inves-

tigation discovered possible irregularities in the issuance of titles to one Co-Mo-Có Lease, Inc. These titles were all issued by a title examiner named Marcel Raiche. On August 12, 1975, Paveglio met with the plaintiff O'Loughlin, his superior, and informed him of these seeming irregularities. It was decided that Paveglio would continue to investigate by following up on leads which he had developed based on a review of records in the bureau's files. In the belief that the FBI as well as the Internal Revenue Service might be contemplating investigations and that these agencies desired confidentiality, it was agreed that Paveglio's investigation would be kept in confidence. It was also feared that Raiche might destroy damaging evidence if he had any involvement and knew he was being investigated. A third asserted reason for confidentiality was the suspicion that some officers in the bureau were friendly with Raiche and/or the principals of Co-Mo-Co.

During the fall of 1975, Paveglio, on his own time, continued to compile evidence on Raiche's issuance of titles without appropriate documentation. Plaintiff did not inform his superiors of the ongoing investigation. It was not until December 29, 1975, when an agent of the FBI asked the commissioner of safety whether he was aware of the problems with Co-Mo-Co, that plaintiff's superiors learned of the situation. The commissioner immediately ordered an internal investigation of the bureau. On March 29, 1976, the plaintiff was discharged by a letter signed by the director of motor vehicles and approved by the commissioner of safety, which stated in part:

> I am discharging you because in your position as Supervisor of the Title Bureau, you failed to report this matter to any of your superiors or to take any corrective action until December 1975, as a result of which a large number of titles naming CoMoCo Lease, Inc. as owner were improperly issued. Personnel Rule VIII, Section 3, A & B.

Timely appeal was filed with the personnel commission. After two days of hearings, plaintiff's discharge was affirmed by a letter stating that, in accordance with rule VIII, section 4, of the rules of the department of personnel, "the burden of proof is on the appellant [plaintiff]." There then followed three findings of fact:

> (A). The Personnel Commission finds that the factual allegations contained in the March 29, 1976 letter of discharge were established by a preponderance of evidence.

(B). The Personnel Commission finds that the appellant first learned of irregularities in the Bureau of Certificate of Title on August 12, 1975 but did not report these irregularities to his superiors until December of 1975.

(C). While initially the appellant may have had reasons that he should conceal the irregularities from certain of his superiors, the failure to call these irregularities to the attention of some higher authorities constitutes a gross failure of the appellant to discharge his duties.

Plaintiff's challenge to the allocation of the burden of proof at the hearing is our first consideration. He argues that that in dismissal proceedings the appointing authority has the burden of establishing the basis for the dismissal.

In the recent case of *Desmarais v. State Personnel Commission,* 117 N.H. 582, 378 A.2d 1361 (1977), this court held that the Federal and State Constitutions do not protect any property interest in the expectation of continued employment by the state. We then held that in a dismissal proceeding, in accordance with state law, the state agency must "bear the initial burden of going forward to establish its operative facts . . . justifying the discharge . . . ." *Id.* at 588, 378 A.2d at 1364. If and when the state does establish the facts justifying discharge by a preponderance of the evidence, the plaintiff then has the burden of going forward and persuading the commission that these allegations were not correct. The commission may of course credit or discredit any evidence presented to it. *Desmarais supra; Peabody v. State Personnel Commission,* 109 N.H. 152, 245 A.2d 77 (1968).

The record before us reveals that the standard of proof was properly applied. Plaintiff without objection voluntarily assumed the burden of going *forward* before the commission. Thus, he might now be foreclosed from asserting any error in the allocation of the burden of going forward. In any event, the commission did find that the state established by a preponderance of evidence the allegations contained in the letter of discharge. The plaintiff then had the burden of persuading the commission that these allegations were incorrect. This he failed to do and the commission concluded that the allegations demonstrated "a gross failure of the appellant to discharge his duties" justifying his discharge.

Plaintiff next argues that a more exacting burden of proof should be imposed on the state because it discharged him for violating rule

VIII, section 3A, which states: "Immediate discharge is mandatory without warning in cases such as those listed below, *provided that guilt is clearly established.*" (Emphasis added.) The section goes on to enumerate five examples of behavior mandating immediate discharge. The conduct for which plaintiff was discharged is not listed, but the list of proscribed conduct is meant to be illustrative, not exhaustive. The plaintiff proposes that "clearly established" is "merely a paraphrase of the rule applicable in criminal cases" and he equates this quantum with "beyond a reasonable doubt" applicable to criminal proceedings.

Plaintiff's letter of termination stated that he was being discharged under section 3B as well as section 3A of rule VIII. He attempts to support his argument that section 3A imposes a different and higher burden of proof by noting that section 3B (entitled "optional discharge"), dealing with violations which *may* warrant immediate discharge, does not contain a proviso that guilt be clearly established before the appointing authority discharges an employee.

Section 3B states that in cases such as, but not limited to, the ones enumerated in that section, "in some instances immediate discharge without warning may be warranted, while in other cases one written warning prior to discharge may be indicated." It thus provides the agency with discretion in dealing with minor infractions of the rules. *See Glynn v. State Personnel Commission,* 116 N.H. 810, 372 A.2d 1303 (1976). In contrast, no discretion is afforded by section 3A, which states that immediate discharge is mandatory.

■ We fail to see how plaintiff can argue that section 3A imposes a higher burden of proof because its language differs from that of 3B, and then ignore the fact that he was discharged for conduct proscribed by that very section as well. He himself urges that a lesser standard of proof is triggered by 3B. The commission upheld his discharge as being proper under both sections, so it must have found his misconduct—which it termed "a gross . . . failure . . . to discharge his duties"—serious enough to warrant immediate discharge under section 3B. Assuming *arguendo* that section 3A standing alone imposes on the state a higher burden of proof, we hold that where, as here, the commission finds that an employee's misconduct warrants immediate discharge under both sections, a higher burden of proof necessarily does not apply.

■ We note, additionally, that we can see no reason why an employee cannot be charged with engaging in conduct warranting immediate discharge under either of the two sections. Both allow for such discharge where misconduct is of a serious nature.

■ We are not persuaded by plaintiff's argument that the denial of his motion for rehearing was erroneous. RSA 541:3 provides that "the commission may grant [a] rehearing if in its opinion good reason therefor is stated in said motion." The commission could properly have found that no good cause was shown by the motion; plaintiff failed to explain why the "new evidence" he wished to produce at a rehearing could not have been presented at the original hearing.

■■ Finally, we refuse plaintiff's request to reverse the commission's affirmance of his dismissal on the ground that the record does not support the findings. A review of the transcript and record reveals sufficient evidence for the commission to conclude that the plaintiff's failure to call to the attention of his superiors the irregularities, and possible criminal violations, in the issuance of titles constituted a gross failure to discharge his duties. "We do not sit as a trier of fact in these matters. Administrative findings of fact are deemed to be 'prima facie lawful and reasonable.' We may not vacate the decision of the commission unless we find that it is 'unjust or unreasonable.' RSA 541:13." *Desmarais v. State Personnel Commission,* 117 N.H. 582, 378 A.2d 1361 (1977). On the record before us, we cannot say that this standard was met.

*Appeal dismissed.*

LAMPRON, J., did not participate in the decision of this case; the others concurred.