Personnel Commission
No. 7523

RAYMOND J. KULAS

v.

THE PERSONNEL COMMISSION
OF THE STATE OF NEW HAMPSHIRE

May 31, 1978

*Cleveland, Waters & Bass*, of Concord (*Robert T. Clark*, orally), for the plaintiff.

*David H. Souter*, attorney general (*Steven J. McAuliffe*, attorney under Rule 23, orally), for the defendant.

BOIS, J.   This is an appeal under RSA ch. 541 from a decision of the State Personnel Commission (hereinafter "commission") upholding the State Liquor Commission's discharge of the plaintiff from his position as assistant retail manager of a State liquor store.

By letter dated January 28, 1976, the liquor commission notified the plaintiff of his discharge from State employment for drinking from State liquor stock on the job and for being aware of employees drinking on the job but failing to try to stop them. According to the liquor commission, plaintiff's conduct was tantamount to theft of State property and willful insubordination.

A timely appeal was filed with the commission, RSA 98:15. The attorney general's office then served plaintiff with a specification of the charges upon which his discharge was based. The allegations were as follows:

> On July 19, 1975, during the evening shift, [plaintiff] on several occasions left the sales area carrying a coffee cup half-filled with liquor, which was then filled with ginger ale which he had previously placed in the "Pepsi" machine for chilling, and proceeded to the back room with another employee who had done likewise, where the drinks were consumed.
>
> During this time, four other employees, including two female cashiers and DePrimio and McKay, were openly drinking beer while on duty, which [plaintiff], although a supervisor, did nothing to prevent or even discourage.
>
> On July 31, 1975, [plaintiff] was similarly aware of several employees, including those mentioned above, drinking beer while on duty, and did nothing to discourage or prevent it.

On September 1975, [plaintiff] was noted to have an alcohol odor on his breath after spending the greater part of the evening shift in the office with Gerald Levesque, during which time the conversation indicated that both were concerned with the problem of presence of alcohol on the breath when returning to the sales area.

The commission heard plaintiff's appeal and on May 10, 1976, unanimously held that the charges against plaintiff were substantiated. Accordingly, the liquor commission's decision to discharge him from State employment was upheld. Plaintiff thereafter moved for a more definite statement of the basis upon which his discharge had been sustained. In response, the commission apprised plaintiff that it had found him to be responsible for the conduct of subordinate employees at the time in question; that he was derelict in his duty by allowing employees openly to consume beer in the store on July 19, and July 31, 1975; and that he violated liquor commission rules by personally consuming liquor within the store on July 19, 1975. This conduct was considered deserving of immediate discharge without warning.

The commission also found that plaintiff improperly failed to prevent one employee from "spiking" another employee's milkshake with State liquor. The State concedes, however, it was unfair for the commission to have relied on this finding in its affirmance of the dismissal, because the plaintiff was not notified before the hearing that this was one of the charges against him. In light of the remaining allegations, this concession does not affect our decision.

Plaintiff's motion for a rehearing was denied; he then appealed to this court pursuant to RSA ch. 541. We affirm.

Plaintiff first disputes the appropriateness of the punishment imposed by the liquor commission, arguing that his immediate discharge was not warranted. He does not deny that the charges against him, if proved, would constitute "[w]illful distruction [sic] of state property" and "willful insubordination" as those phrases are used in rule VIII, section 3B, of the rules of the department of personnel. Section 3B provides that in cases involving infractions such as, but not limited to, the ones enumerated therein (including willful destruction of State property and willful insubordination) "in some instances immediate discharge without warning may be warranted, while in other cases one written warning prior to discharge may be indicated." The section thus supplies the liquor commission with discretion in dealing with some infractions of the rules. *O'Loughlin v. N.H.*

*Personnel Commission*, 117 N.H. 999, 1003, 380 A.2d 1094, 1097 (1977).

As plaintiff points out, eleven other employees at the same liquor store were fired on that day. Their discharges resulted from an undercover investigation of the store conducted by the liquor commission. Of those eleven employees, one did not appeal his discharge. The other ten—the store manager, eight clerks, and the store's other assistant manager—did appeal; all of them except the second assistant manager were reinstated by the commision. *Cf. Dumais v. Personnel Commission*, 118 N.H. 309, 386 A.2d 1269 (1978). Plaintiff contends that the commission acted impermissibly in upholding his discharge for failing to adequately supervise subordinates, while at the same time reinstating the store manager, who also allegedly failed to supervise subordinates; similarly, plaintiff argues, the commission erred in upholding his discharge for drinking on the job, while at the same time reinstating the clerks, who also allegedly drank on the job.

██ This argument is unavailing. First of all, we are not convinced that merely because plaintiff was charged with infractions also allegedly committed by the store manager and clerks, he must receive the same sanction. A host of criteria apply to the determination of sanctions for employee misconduct. Such determination necessarily must be tailored to the individual employee, and we are loath to substitute our judgment in this matter for the commission's. At any rate, the basis for distinguishing between the plaintiff, on the one hand, and the store manager and clerks, on the other, is clear. Although the manager might have been irresponsible in supervising the store and the clerks might have been drinking on the job, plaintiff both failed to supervise his subordinates *and* personally violated liquor regulations. Unlike the manager and the clerks, he committed both infractions. This distinction suffices to justify the difference in sanctions imposed.

██ Plaintiff's second argument, a challenge to the findings of fact made by the commission, also does not persuade us. The commission heard testimony from two undercover private investigators that plaintiff had consumed whiskey in the store and that he had failed to try to prevent subordinate employees from drinking beer in the store on at least two occasions. Although the plaintiff attempted to contradict this testimony, "[t]he commission may of course credit or discredit any evidence presented to it." *O'Loughlin v. N.H. Personnel Commission*, 117 N.H. at 1002, 380 A.2d at 1096; *Colburn v. Personnel Commission*, 118 N.H. 60, 382 A.2d 907 (1978). That

the commission reinstated the clerks who were discharged for drinking on the job does not necessarily mean that the commission disbelieved that those clerks were in fact guilty of drinking on the job; as stated above, the commission could have determined that the clerks were guilty and yet not deserving of discharge.

There was testimony that the manager and assistant managers of the store might have hesitated about disciplining clerks because they feared that some clerks might have influential political connections. The commission again was free to discredit this testimony; in addition, the commission could properly have rejected this excuse for failing to perform a supervisory duty.

■ Finally, while doubting "that this case presents any 'liberty' issue which would withstand the U.S. Supreme Court's analysis" of liberty as that term is used in the due process clause of the fourteenth amendment to the United States Constitution, plaintiff contends that his interest in liberty was impaired when he was "subjected to arbitrary adjudicative procedures in the course of this matter." First of all, we disagree that the procedures employed by the commission were arbitrary. Plaintiff received advance notice of the charges against him in specific terms; he was assisted by counsel; he confronted witnesses against him; he testified on his own behalf; he was apprised in detail of the basis on which the commission sustained his discharge, etc. At any rate, counsel for plaintiff at oral argument specifically stated that he was not asserting any claim that plaintiff was personally restrained, was subjected to an invasion of privacy, or was stigmatized by his dismissal. Thus, plaintiff's liberty-interest claim is not of the type recognized by the United States Supreme Court as being within the scope of the due process clause "liberty" protected by the United States Constitution against State action. *See Codd v. Velger*, 429 U.S. 624 (1977) (per curiam); *Bishop v. Wood*, 426 U.S. 341 (1976). Rather, his claim is grounded in a general "right to be free from arbitrary adjudicative procedures." As plaintiff concedes by his "doubt," fourteenth amendment liberty has never been held to encompass such a broad right. *See* Monaghan, *Of Liberty and Property*, 62 Cornell L. Rev. 405, 421 n.112 (1977). *But see* Van Alstyne, *Cracks in "The New Property,"* 62 Cornell L. Rev. 445, 487–90 (1977). We decline the invitation to extend the fourteenth amendment to include this "right" in the present case.

*Appeal dismissed.*

All concurred.