Public Utilities Commission
No. 80-425

# APPEAL OF GAS SERVICE, INC.
## (New Hampshire Public Utilities Commission)

### September 16, 1981

*Orr & Reno P.A.*, of Concord (*Anne Cagwin Hagstrom* on the brief and orally), for Gas Service, Inc.

*Gregory H. Smith*, attorney general (*David W. Jordan*, assistant attorney general, on the brief and orally), for the State of New Hampshire.

Bois, J.   This appeal from an order of the public utilities commission (PUC) asks us to determine whether the PUC unlawfully, unjustly, or unreasonably decided to reject Gas Service, Inc.'s request for a change in its tariff that would require new customers located adjacent to existing company mains to make contributions in aid of construction for service lines from their residences or businesses to the existing mains. We conclude that Gas Service, Inc., has not demonstrated by a preponderance of the evidence that the order of the PUC should be set aside, and we therefore affirm.

Gas Service, Inc., is a utility that supplies natural gas to residential, commercial, and industrial customers and is regulated by the PUC. On January 21, 1980, Gas Service, Inc., filed with the PUC certain requested revisions to its tariff. The company sought to change its contribution-in-aid-of-construction requirement, which provided that if the company extended one of its gas mains for a new customer, then that customer would have to contribute to the cost of construction of the main if the estimated net annual revenue from the customer received by the company was less than one-quarter of the cost of constructing the main. This contribution would apply only to the extent that the extension of the main exceeded one hundred feet, and the amount would be the difference between the cost of construction and four times the estimated net annual revenue. By its filing with the PUC, Gas Service, Inc., sought a change that would incorporate a twenty-five percent rule requiring each customer to contribute either a specified amount ($200 for a residential customer or $500 for a commercial customer) or the difference between the cost of construction and four times the net annual revenue, whichever was greater, for *all service line attachments to existing mains*, as well as for the extension of mains to new territory. The proposed changes also sought to eliminate the one-hundred-foot credit.

On May 15, 1980, the PUC held a hearing on the proposed revisions to the tariff, at which the company introduced the testimony of its engineering and planning vice president. After hearing the evidence, the PUC accepted all of the company's proposed revisions, with the exception of the proposed contribution in aid of construction by new customers situated adjacent to existing company

mains who sought gas from the company through a service line. The August 29, 1980, order of the PUC concluded that:

> "The 25% rule as proposed would generally require the minimum contribution for main extensions for heating customers and a substantially larger contribution from non-heating residential customers. This shows a preference for heating over non-heating customers, even though this method will on the average result in a larger increase in rate base for additional heating cutomers. For this reason the Commission must reject this aspect of the filing pending more information addressing these concerns.
>
> The same holds true for the similar proposed rule regarding commercial and industrial customers."

After the PUC denied the motion for rehearing filed by Gas Service, Inc., the company appealed to this court, arguing that its contributions proposal does not unlawfully discriminate against small users of gas, that the PUC's rejection of this plan was unlawfully discriminatory against existing customers, and that the denial of the motion for rehearing by the PUC was erroneous.

▮▮▮ At the outset, we set forth the standard of review of PUC orders enunciated in *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 402 A.2d 626 (1979).

> "The legislature has established the parameters for our inquiry in performing our review of commission orders under RSA 541:13:
>
>> *Burden of Proof* . . . [A]ll findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.
>
> . . .
>
> The ultimate issue before this court on appeal is whether the party seeking to set aside the decision of the commission has demonstrated by a clear preponderance of the evidence that such order is contrary to law, unjust, or unreasonable."

*Id.* at 340, 402 A.2d at 632 (citations omitted).

"We emphasize that we do not sit as a trier of fact in appeals from the commission . . . and recognize the soundness of having utility ratemaking matters determined by a commission of experts qualified to make informed judgments in this specialized field. . . . We will reverse commission decisions only when they are unlawful, unreasonable, unjust or constitute an abuse of discretion."

*Id.* at 354, 402 A.2d at 641 (citations omitted).

■ Gas Service, Inc., first argues that the proposed contributions policy does not unlawfully discriminate against small users of gas, asserting that there "is no rational, logical, or valid basis on which to distinguish contributions for mains from contributions for service lines." Our review of the record, particularly the reasoning of the PUC set forth in its order, leads us to conclude that the PUC's decision was rationally based on a finding that the proposed plan violates RSA 378:10 because it would discriminate against new customers seeking connection to the company main only for cooling and hot water, and favor those seeking to provide for that and additional gas service requirements.

Gas Service, Inc., next argues that the PUC's rejection of its contributions plan for service line construction unlawfully discriminates against existing customers, citing several cases from other jurisdictions to support its contention. *E.g., Re Wisconsin Nat. Gas Co.,* 14 PUR 4th 518 (Wisc. Pub. Serv. Comm'n 1976); *City of Crossett v. Arkansas Louisiana Gas Co.,* 99 PUR 3d 394 (Ark. Pub. Serv. Comm'n 1973); *Re Kansas-Nebraska Nat. Gas. Co.,* 48 PUR 3d 308 (Fed. Power Comm'n 1963); *Fayette County Gas Co. v. Pennsylvania PUC,* 51 PUR (NS) 493 (Pa. Super. 1943). Our reading of these cases, however, reveals that they either are distinguishable from the case before us or are consistent with the PUC's order.

In *Fayette County Gas Co. v. Pennsylvania PUC supra,* the Pennsylvania Superior Court concluded that a potential customer living in a sparsely populated rural area was required to contribute to the construction of a service line from his home to an existing transmission main. The court, however, based its decision on the fact that the "consumer [was] not within convenient connecting distance with a low pressure distribution line." 51 PUR (NS) at 497.

We also find *Re Kansas-Nebraska Nat. Gas Co. supra* distinguishable from the case before us because in the *Kansas* case the Federal Power Commission, although stating that "[a]n essential

requirement in extending service to a new customer is that the extension should not unduly burden existing customers," 48 PUR 3d at 313, imposed a contribution requirement on new customers, who, unlike those in the instant case, were located in new undeveloped franchise territory. *Id.* at 314. Likewise, *Re Wisconsin Nat. Gas Co. supra* is distinguishable because it involved the extension of mains, not service connections to existing mains. 14 PUR 4th at 527. The PUC order before us *does provide* for contributions in aid of construction for extensions of mains.

Furthermore, *City of Crossett v. Arkansas Louisiana Gas Co. supra* appears to be consistent with the PUC order before us because both recognize the difference between new customers located adjacent to existing mains and new customers seeking connection from an unusual or remote area of the franchise territory.

We therefore conclude that the decision of the PUC does not unlawfully discriminate against existing customers, and that the decision fell squarely within the policy-making function of the PUC. Gas Service, Inc., has not shown by a preponderance of the evidence that the PUC acted unlawfully or that its order was unjust or unreasonable.

Gas Service, Inc., also argues that the PUC erroneously denied its motion for rehearing. We first note that RSA 541:3 states in part that "the commission *may* grant such rehearing [of an order of the commission] if in its opinion good reason therefor is stated in said motion." (Emphasis added.) Based on the motion for rehearing before it, "[t]he commission could properly have found that no good cause was shown by the motion; [Gas Service, Inc.] failed to explain why the 'new evidence' [it] wished to present at a rehearing could not have been presented at the original hearing." *O'Loughlin v. N.H. Personnel Comm'n,* 117 N.H 999, 1004, 380 A.2d 1094, 1097 (1977); *see Appeal of Boucher,* 120 N.H. 38, 41, 411 A.2d 161, 163 (1980).

*Appeal dismissed.*

BATCHELDER, J., did not sit; the others concurred.