Department of Labor
Nos. 98-103
    98-104

APPEAL OF LUCINDA KIRK LINN

APPEAL OF JODI A. SEAVER

(New Hampshire Department of Labor)

October 31, 2000

*Shaheen & Gordon, P.A.*, of Concord (*Naomi L. Mooney* on the briefs), and *Donald L. Abrams*, of Balboa Island, California, by brief and orally, for the petitioners.

*Sheehan, Phinney, Bass + Green, P.A.*, of Manchester (*Michael J. Lambert* and *Richard P. O'Neil* on the briefs, and *Mr. Lambert* orally), for the respondent.

HORTON, J. The petitioners, Lucinda Kirk Linn and Jodi A. Seaver, appeal decisions of the New Hampshire Department of Labor (DOL) ruling that the respondent, Beech Hill Hospital, LLC, did not violate the Whistleblowers' Protection Act (Act), RSA 275-E:2 (1999), when it discharged them. We affirm the Linn decision and affirm in part, vacate in part, and remand the Seaver decision.

These appeals arise out of events occurring on May 10, 1997, at the Beech Hill Hospital (hospital), a drug and alcohol rehabilitation hospital. Earlier that year, the hospital had been investigated by the New Hampshire Department of Health and Human Services (HHS) following a riot, two patient deaths, and an allegation of rape of a fourteen-year-old resident. The investigation resulted in a report finding the hospital to be "not in compliance" with certain statutes and regulations, including specific deficiencies relating to insufficient staffing.

At 2:30 p.m. on May 10, Linn reported to her job as part-time switchboard operator at the hospital. As her shift progressed, Linn became uneasy because one staff member had called in sick, one had left, and the remaining staff members were either assigned to a separate building or engaged in particularly difficult admissions, leaving her without any other staff members immediately available to deal with the residents. Adding to her unease, security personnel had not reported at 6:00 p.m. as she had expected. Meanwhile: one resident insisted on leaving against medical advice; Linn was

subjected to harassing comments from two male residents; an Alcoholics Anonymous meeting was scheduled to begin at 7:00 p.m., bringing additional people into the unit; and she was responsible for what she estimated to be thousands of dollars of money belonging to residents.

During the course of her shift, Linn expressed her concerns to Seaver, the charge nurse on duty, and placed phone calls to numerous hospital staff members, expressing her concern and requesting assistance and additional staffing. The staff members Linn called included the administrator on call, the head of clinical services, the head of security, and the director of nurses. She learned that security would not be on duty until 9:00 p.m., but received no assistance. After calling her mother, who advised her to either leave or call the police, Linn again contacted Seaver, updated her as to her inability to obtain additional staff, and asked Seaver if she should call the police. Seaver told her she should do what she needed to do in order to feel safe. Linn called the police at approximately 7:00 p.m., telling them that the hospital had no security on duty and that, although there was no emergency situation, she wanted them to be aware of the situation in case something happened. Linn did not inform either Seaver or the charge nurse who came on duty at 7:00 p.m. that she had called the police. Both Seaver and the replacement charge nurse also placed calls to hospital staff requesting assistance and received none. Seaver left the hospital at approximately 7:30 p.m., and Linn left at approximately 9:00 p.m. No incidents occurred.

Although there had been no request for the police to come to the hospital, a police officer stopped by at 9:02 p.m., met briefly with a therapy aide, and, having determined that there was no need for his services, left at 9:20 p.m. The therapy aide reported the police visit to the charge nurse, who reported it to the administrator on call.

The next day, Linn was told that she was suspended for calling the police, pending an investigation of the matter. On May 14, she was discharged. The termination letter attributed her termination to her: (1) breach of policy; (2) failure to communicate safety concerns to the proper individuals; (3) misuse of police resources; and (4) failure to communicate that she had contacted the authorities.

On May 15, Seaver, who had never been questioned about the events of May 10, called the hospital's chief executive officer (CEO), Linda Achber, to discuss what had transpired and her disagreement with Linn's termination. Achber did not change her opinion that Linn had been properly terminated. On May 19, Seaver participated in an interview with Sabin Guertin, the head of licensing for HHS,

in the course of another HHS investigation of the hospital. During the interview, Seaver expressed candid opinions regarding whether the hospital had changed since Achber had been hired in April, whether she felt free to speak out, and what she thought of Achber's sincerity, the director of nurses' competence, and Linn's termination.

On May 29, Seaver met with the director of nurses, Lois Hollow, who had received a report that Seaver had been calling her names behind her back. In the course of the meeting, Seaver told Hollow that: (1) she had never heard Hollow say anything intelligent; (2) Hollow had not done anything for the nurses on staff; (3) Hollow always aligned herself with administration rather than the nursing staff; and (4) Hollow was only looking for approval. After the meeting, Hollow called Achber to report what had transpired at the meeting, and they agreed that something would have to be done about Seaver's performance. On May 30, Seaver was discharged. The termination letter attributed her discharge to her "[c]ontinuous undermining of the hospital's goals, as evidenced by: [(1)] Encouraging and promoting divisiveness among staff; [(2)] Frequent displays of rude and disrespectful behavior and attitude; [and (3)] Overt insubordination related to [her] supervisor."

Linn filed a whistleblowers' complaint alleging that she was fired as a result of reporting the unsafe and potentially dangerous staffing situation at the hospital on May 10, 1997. The DOL denied her claim, ruling that Linn had not reported acts she had reasonable cause to believe to be violations of the law, see RSA 275-E:2, I(a), and that she had not attempted to utilize the hospital's internal grievance procedure to restore her rights, see RSA 275-E:4, I (1999).

Seaver filed a whistleblowers' complaint alleging that she was terminated due to her support of Linn's reporting of the staffing situation on May 10, and due to her own reporting thereof. The DOL denied her claim and ruled that, of the three instances in which Seaver claimed to have made reports — (1) to Achber, regarding Linn's firing; (2) to Achber and other administrators, regarding the staffing situation on May 10; and (3) to Guertin, regarding both Linn's firing and the staffing issue — the first two did not constitute reports of actions she had reasonable cause to believe to be violations of law, and the final instance, although arguably a report, was not causally connected to her termination. See RSA 275-E:2, I(a). We address each of the petitioners' arguments in turn.

We will not set aside an order of the DOL except for errors of law, unless we are satisfied, by a clear preponder-

ance of the evidence, that such order is unjust or unreasonable. *See* RSA 541:13 (1997). The agency's findings of fact are deemed *prima facie* lawful and reasonable. *See id.* This presumption may be overcome only by a showing that there was no evidence from which the agency could conclude as it did.

*Appeal of Fred Fuller Oil Co.*, 144 N.H. 607, 609, 744 A.2d 1141, 1143 (2000) (quotation and brackets omitted).

Linn first contends that the DOL erred in ruling that she could not prevail because she never attempted to restore her rights to employment through the hospital's internal grievance procedure. According to Linn, the hospital failed to produce testimony that a grievance procedure existed or was available to her, and therefore the DOL could not rely on her failure to follow any such procedure. We disagree.

RSA 275-E:4, I, provides, in pertinent part:

Any employee who alleges a violation of rights under RSA 275-E:2 or 3, and who has first made a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment, may obtain a hearing with the commissioner of labor . . . . Following such hearing, the labor commissioner . . . shall render a judgment on such matter . . . .

At the DOL hearing, Linn testified that at her orientation on her first day of employment, she signed a "New Employee Orientation" form acknowledging that she had attended new employee orientation, received a copy of the employee handbook, and reviewed personnel procedures including, *inter alia*, information regarding the hospital's grievance procedure. The signed form was received into evidence at the hearing. The DOL reasonably determined that Linn's acknowledgment on the orientation form constituted evidence that a grievance procedure existed at the hospital. Despite that evidence, Linn offered no evidence either that she had attempted to utilize the grievance procedure to restore her rights or that no such procedure existed at the hospital. Accordingly, we cannot say that no evidence supports the DOL's findings, and we therefore affirm. *See Appeal of Fred Fuller Oil*, 144 N.H. at 609, 744 A.2d at 1143.

Having concluded that Linn did not meet the statutory requirements of RSA 275-E:4, I, we need not address her second argument,

that the DOL erred in determining that she did not report what she had reasonable cause to believe was illegal activity pursuant to RSA 275-E:2, I(a).

■ We now turn to Seaver's appeal. Seaver first challenges the DOL's ruling that her protestation of Linn's discharge and her complaints of staffing shortages were not "reports" under RSA 275-E:2, I(a) because she did not state that she believed either the discharge or the staffing shortages constituted illegal activities. RSA 275-E:2 provides, in pertinent part:

> I. No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:
> (a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States . . . .

In *Appeal of Fred Fuller Oil*, 144 N.H. at 610-11, 744 A.2d at 1141, we clarified what constitutes a "report": "[w]e . . . presume that an employer is familiar with the laws and regulations governing its business and . . . consider a report to have been made if a reasonable employer would have understood from an employee's complaint that the employee was reciting a violation of law." *Id.* at 611, 744 A.2d at 1144. We held that an employee need not make "reference to any 'violation of any law or rule'" in order to be deemed to have reported under the Act. *Id.* at 610-11, 744 A.2d at 1144. In the instant case, the DOL did not make a finding as to whether Achber would reasonably have understood from Seaver's complaints that Seaver was reciting a violation of law or regulation. Accordingly, we vacate the DOL's decision as to Seaver's failure to report what she had reasonable cause to believe was a violation of law and remand for findings and rulings commensurate with the standard set forth in *Appeal of Fred Fuller Oil*.

■ Seaver also argues that the DOL erred in ruling that, although her interview with Guertin may have constituted a report, she had not met her burden of demonstrating that she was terminated as a result of the report. *See* RSA 275-E:2, I; *Appeal of Fred Fuller Oil*, 144 N.H. at 611, 744 N.H. at 1144. Review of the record reveals ample evidence from which the DOL could have concluded that Seaver's termination was not causally linked to her

conversation with Guertin. Seaver bore the burden of proving that her termination was due to her conversation with Guertin. *See* RSA 541:13. Nonetheless, at the DOL hearing, she failed to call Guertin, who she claimed in her motion for reconsideration and on appeal "could prove or disprove the ultimate issue" by providing "the best evidence of what [he] actually repeated to CEO Achber[] regarding his conversation with [Seaver] on May 19th," and failed to present any evidence as to why he could not have been called at the hearing. Absent such justification, the DOL properly declined to reopen the testimony. *See Appeal of Gas Service, Inc.*, 121 N.H. 797, 801, 435 A.2d 126, 129 (1981). Seaver having failed to establish that the DOL's order as to her report to Guertin was unjust, unreasonable, or erroneous as a matter of law, we affirm the DOL on that issue. *See* RSA 541:13.

> *Affirmed in part; vacated in part; and remanded.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and BRODERICK, J., concurred.