Compensation Appeals Board
No. 98-510

APPEAL OF CNA INSURANCE COMPANY

(New Hampshire Compensation Appeals Board)

January 29, 2001

*Wadleigh, Starr & Peters, P.L.L.C.,* of Manchester (*Michael R. Mortimer* on the brief and orally), for the petitioner, CNA Insurance Company.

*Sulloway & Hollis, P.L.L.C.,* of Concord (*James E. Owers* and *Carolyn A. Koegler* on the brief, and *Mr. Owers* orally), for respondent Hanover Insurance Company.

*Fraizer, Bolton, Murphy & Stevens,* of Manchester (*Patricia C. Fraizer* on the brief), for respondent Hartford Insurance Company.

*Moquin & Daley,* of Manchester, for the claimant, filed no brief.

DALIANIS, J. The petitioner, CNA Insurance Company (CNA), appeals a decision of the New Hampshire Compensation Appeals Board (board) finding it liable for the claimant's, Brian Bethune's, cumulative trauma disability claim. We vacate and remand.

We recite the facts as found by the board or as presented in the record. Bethune developed low back pain in 1987, after approxi-

mately six years as a welder at Gilchrist Metal Fabricators, Inc. (employer). He first sought medical treatment for his condition in 1994. His physician diagnosed discogenic disease and prescribed physical therapy. In December 1994, his doctor took him out of work for one week because of worsening back pain and muscle spasms. He returned to work as a welder, working at a smaller bench with lighter weights. Despite these modifications, Bethune's condition worsened.

On April 1, 1995, the employer changed workers' compensation carriers from CNA to respondent Hanover Insurance Company (Hanover). Bethune missed work again from December 1995 to January 1996. In 1996, he was given a sedentary position in purchasing. His back condition continued to worsen, and in May 1996, he left work permanently due to back pain.

The New Hampshire Department of Labor determined that CNA was the responsible carrier because it was on the risk when the claimant lost time from work in December 1994. CNA appealed to the board, which also determined that CNA was responsible because it was the carrier on the risk when the claimant "first ha[d] to cease working because of the disability."

"We will not disturb the board's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable." *Appeal of Bergeron*, 144 N.H. 681, 683, 749 A.2d 296, 298 (2000).

On appeal, CNA argues that the board erroneously concluded that it was the responsible carrier because: (1) the December 1994 period of disability was not caused by the cumulative trauma injury; and (2) when Bethune returned to work from his December 1994 disability, his earning capacity was not diminished. We address each argument in turn.

CNA argues that a "discrete trauma" to Bethune's back, from a physical therapy maneuver, caused his December 1994 disability. This injury, CNA asserts, was separate from Bethune's underlying cumulative trauma condition that caused him to leave work for a month in December 1995 and permanently in May 1996. We disagree.

There was no medical evidence that Bethune ever suffered a "discrete trauma" to his lower back. Rather, the uncontroverted medical evidence was that his lower back condition developed gradually, as a result of years of heavy physical labor. As his treating physician noted, "the labor [Bethune] did at [the employer] probably caused repeated stress injuries to the lower back, increasing the degeneration and wearing and tearing of the discs and

probably made him more susceptible to discogenic lower back problems." As another doctor noted, Bethune had "no specific history of trauma. [His condition] slowly worsened . . . ."

Nor was there substantial medical evidence that Bethune's December 1994 back pain and spasms resulted from physical therapy treatment. The contemporaneous medical records of Bethune's treating physician and physical therapist indicated that Bethune had back pain and spasms, but did not attribute these symptoms to physical therapy. The board was entitled to give these records "substantial weight." *Appeal of Kehoe*, 141 N.H. 412, 417, 686 A.2d 749, 753 (1996) (quotation omitted).

■ Even if the physical therapy exacerbated Bethune's symptoms, the causal connections between Bethune's December 1994 disability, his underlying cumulative trauma injury, and his work activities, remained intact. Bethune was in physical therapy because of his lower back condition. At most, as CNA concedes, the physical therapy temporarily aggravated his cumulative trauma symptoms. His December 1994 disability was therefore causally connected to his cumulative trauma condition and was compensable. *See* 1 A. LARSON & L. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 10.09[1] (2000) ("It is now uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable.").

We now turn to the date of Bethune's cumulative trauma injury. Both parties agree that "the appropriate date of the injury in a claim for workers' compensation involving cumulative trauma is the day the claimant's injury causes a diminished earning capacity." *Appeal of Wausau Ins. Cos.*, 143 N.H. 478, 481, 727 A.2d 988, 990 (1999). CNA argues that Bethune suffered a loss of earning capacity either in December 1995, when he left his welder job, or May 1996, when he left work altogether. Hanover argues that Bethune suffered a loss of earning capacity in December 1994, when he returned from disability to a lighter duty welding position.

Earning capacity "is an objective measure of a worker's ability to earn wages." *Appeal of Commercial Union Ins. Co.*, 145 N.H. 355, 356, 761 A.2d 509, 511 (2000). [A] determination of whether a worker's earning capacity has been diminished must be reached with reference to the worker's value in the marketplace, independent of the subjective measure of the worker's actual earnings." *Id.*

■ The board made no findings as to when the claimant's earning capacity was diminished, and the record is devoid of evidence of Bethune's value in the marketplace. We therefore vacate its order and remand for proceedings consistent with this opinion.

In light of our holding, we need not reach the parties' remaining arguments.

*Vacated and remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.