Insurance Commissioner
No. 79-400

# APPEAL OF METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY
## (New Hampshire Insurance Commissioner)

November 13, 1980

*McLane, Graf, Raulerson & Middleton*, of Manchester (*James R. Muirhead* orally), for Metropolitan Property and Liability Insurance Company.

*Gregory H. Smith*, acting attorney general (*Andrew R. Grainger*, assistant attorney general, orally), for the Commissioner of Insurance.

*Wiggin & Nourie*, of Manchester (*Gary E. Hicks* orally), for amici curiae, Robert Paris, Gary LaGuardia, and William Butka on behalf of themselves and two hundred and ten similarly situated licensed sales representatives.

KING, J. This is an appeal pursuant to RSA 541:6 from an order of the New Hampshire Insurance Commissioner, Frank E. Whaland, suspending the license of the Metropolitan Liability and Property Insurance Company (hereinafter Metropolitan) for alleged violations of RSA ch. 417 (Supp. 1979) and Insurance Department Regulation 10, RSA ch. 417-A (Supp. 1979), and RSA ch. 417-B (Supp. 1979).

Metropolitan concedes that it violated the latter two provisions but petitions this court to vacate the order on the grounds that (1) the commissioner's finding that Metropolitan violated Regulation 10 is erroneous as a matter of law; (2) the order is unduly harsh and excessive because all of the violations were inadvertent; and (3) the order is the product of bias. In addition, amici curiae seek to vacate the order on the grounds that the commissioner failed to give notice to two hundred and thirteen Metropolitan sales representatives and that the order imposed an unjust and undue hardship on the sales representatives. We affirm the commissioner's order.

In December 1978, the New Hampshire Insurance Department (hereinafter department) conducted an examination pursuant to RSA 400-A:37 (Supp. 1979) of the operations of Metropolitan at its offices in Warwick, Rhode Island, and Woburn, Massachusetts. Using a random method of selecting files, the examiners investigated Metropolitan's compliance with New Hampshire's insurance laws and regulations in thirty-eight different files. The

examiners found the error ratio to be 23.68 percent, nearly one file out of every four examined. The examiners set forth their findings in a report entitled "Examination Report of Metropolitan Property and Liability Insurance Company, Warwick, Rhode Island, as of December 15, 1978."

Metropolitan requested a hearing with respect to the report pursuant to RSA 400-A:37 V(b) (Supp. 1979). Following the hearing on March 30, 1979, the examiners modified the report and filed it with the department. On May 24, 1979, the department sent Metropolitan notice to show cause "why its license to transact business in New Hampshire should not be revoked or, alternatively, why other administrative action should not be taken" in light of apparent violations of New Hampshire law as set forth in the examiners' report.

At a hearing held on June 15, 1979, Metropolitan produced evidence characterizing its failure to comply with certain procedural requirements of New Hampshire law as "inadvertent." Following the hearing, the commissioner issued an order in which he found violations of RSA ch. 417 (Supp. 1979) and Regulation 10, RSA ch. 417-A (Supp. 1979), and RSA ch. 417-B (Supp. 1979). The commissioner suspended Metropolitan's license for sixty days for each group of violations and ordered the three sixty-day periods to run concurrently.

On November 21, 1979, following denial of its motion for rehearing, Metropolitan filed an appeal to this court pursuant to RSA 541:6. The parties agreed to a stay of the order pending the outcome of this appeal.

The standard of review in appeals from administrative orders is set forth in RSA 541:13. The statute provides that the burden of proof is on the plaintiff to show that the order of the commissioner is clearly unlawful or unreasonable. The statute further provides that all findings of fact are prima facie reasonable and that the order appealed from will not be set aside except for errors of law or unless the court is satisfied by a clear preponderance of the evidence that the order is unjust or unreasonable.

The first issue on appeal is whether the commissioner erred in finding that Metropolitan had violated the provisions of RSA ch. 417 (Supp. 1979) and Regulation 10. Regulation 10 specifies numerous procedures with which insurers must comply in order to satisfy the requirements of RSA ch. 417 (Supp. 1979). It provides that an insurer can be penalized if it *"knowingly* violate[s] any provision of this regulation . . . ." (Emphasis added.) Metropolitan argues that this language means that an insurer violates

Regulation 10 only if it does so "consciously" or "intentionally" rather than by accident, mistake, or inadvertence.

■ The legal definition of "knowingly" is not fixed but varies according to the context in which it is used. *United States v. Tolkow*, 532 F.2d 853, 858 (2d Cir. 1976). We doubt, however, that the term requires that the acts proscribed be done with knowledge of their unlawfulness, as Metropolitan suggests. *See id.* at 857–58. It is enough that the acts complained of are done voluntarily rather than through mistake or inadvertence. *United States v. Haney Chevrolet, Inc.*, 371 F. Supp. 381, 384 (M.D. Fla. 1974); *United States v. Schneiderman*, 102 F. Supp. 87, 93 (S.D. Cal. 1951); 22 C.J.S. *Criminal Law* § 31(3) at 111 (1961). *See also* RSA 626:2 II(b), (d) (Criminal Code definitions of "knowingly" and "negligently").

■ The Opinion and Order of the commissioner stated, "I find as a matter of fact that there was a *general negligence* on the part of the Company. . . ." (Emphasis added.) Because Regulation 10 proscribes only "knowing" violations, that part of the order finding that Metropolitan violated this provision is erroneous as a matter of law.

The Opinion and Order of the commissioner also stated that Metropolitan violated the provisions of RSA 417-A:5 and RSA 417-B:4 II which set forth the obligations of an insurer with respect to the cancellation of or refusal to renew a policy of insurance. These two provisions are not affected by the knowledge requirement contained in Regulation 10. Consequently, although characterizing its failure to comply with these provisions as inadvertent, Metropolitan admits these violations.

■ Metropolitan next argues that a sixty-day suspension of its license for violating each of these latter provisions is unreasonable and unjust because the punishment is harsh and excessive and, thus, an abuse of discretion. This court may set aside an administratively imposed punishment if it is so harsh or excessive as to be unreasonable or to constitute an abuse of discretion. RSA 541:13; *see Mannone v. Whaland*, 118 N.H. 86, 88, 382 A.2d 918, 919 (1978); *Mayflower Sec. Co., Inc. v. Bureau of Securities*, 64 N.J. 85, 93, 312 A.2d 497, 501 (1973); *Sheppard v. Old Republic Life Ins. Co.*, 21 Pa. Commw. Ct. 360, 366, 346 A.2d 383, 387 (1975); 3 G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 26.11 (2d ed. 1960). But because appropriate sanctions must necessarily be tailored to particular cases, we are disinclined to substitute our judgment for

that of the commissioner in all but exceptional cases. *See Kulas v. Personnel Comm'n,* 118 N.H. 387, 390, 387 A.2d 639, 642 (1978).

■ Although the commissioner erroneously found a violation of RSA ch. 417 (Supp. 1979) and Regulation 10, he legitimately found that Metropolitan had violated the provisions of RSA ch. 417-A (Supp. 1979) and RSA ch. 417-B (Supp. 1979). For each of these groups of violations, he suspended the license of Metropolitan for sixty days. But because the suspensions are to run concurrently, Metropolitan suffers only one sixty-day period of suspension. Although this penalty may be somewhat harsh, we cannot say that the commissioner abused his discretion in the light of the violations outlined herein.

■ Metropolitan additionally argues that the overall conduct of the commissioner at the June 15, 1979, hearing demonstrates that the commissioner had predetermined to punish Metropolitan by suspension regardless of mitigating factors. It is imperative, of course, that the neutrality and impartiality of administrative agencies not be violated. *In re Jack O'Lantern, Inc.,* 118 N.H. 445, 449, 387 A.2d 1166, 1168 (1978). A review of the record does not give credence to the argument that the commissioner had any personal or pecuniary interest in the outcome of the case or that the commissioner was motivated by ill-will. *See N.H. Milk Dealers' Ass'n v. N.H. Milk Control Board,* 107 N.H. 335, 339, 222 A.2d 194, 198 (1966). Consequently, we reject Metropolitan's claim of bias.

■ Metropolitan's sales representatives, intervenors herein, argue that the order should be vacated because the commissioner failed to give notice of the hearing to the individual representatives. RSA 417:6 (Supp. 1979), the provision pursuant to which the June 15, 1979, hearing was held, provides that when the commissioner suspects any person of violating RSA 417:4 (Supp. 1979) "he shall issue and serve upon *such person* a statement of the charges. . . ." (Emphasis added.) RSA 417:6 (Supp. 1979). Because the commissioner neither suspected nor charged individual sales representatives with any wrongdoing, the commissioner was under no obligation to give them notice.

■ Finally, Metropolitan's sales representatives argue that the dislocation of their business that will result from the penalty imposed on Metropolitan is unjust and undue. Any penalty imposed on any employer for violating the law may have some effect on its employees. As noted above, Metropolitan's violations

738

have resulted in a suspension of its license for a limited time. To the extent that Metropolitan's salesmen lose commissions earned in those cases in which policyholders are not willing to forbear insurance purchases during the period of the suspension, such losses are subordinate to the public interest which the commissioner is charged to protect.

*Affirmed.*

BROCK, J., did not sit; the others concurred.