Merrimack
No. 87-116

HARVEY C. DEWEES

v.

NEW HAMPSHIRE BOARD OF PHARMACY

ROGER E. DYKSTRA

v.

NEW HAMPSHIRE BOARD OF PHARMACY

April 1, 1988

*Wiggin & Nourie,* of Manchester (*Edward L. Cross, Jr.,* on the brief and orally), for the plaintiffs.

*Stephen E. Merrill,* attorney general (*Douglas N. Jones,* assistant attorney general, on the brief and orally), for the State.

SOUTER, J. ▮ The plaintiffs appeal an order of the Superior Court (*Bean,* J.) dismissing their appeal under RSA 318:31 from the New Hampshire Pharmacy Board, which temporarily suspended their licenses to practice pharmacy based on findings that, *inter alia,* each of them had violated provisions of RSA chapter 318. We reverse because the board's findings are inadequate as a matter of law to support imposition of penalties under the statutes and regulations cited by the board among its rulings of law as authority for the disciplinary action, and because the board failed to conform to requirements of the administrative procedure act for the conduct of an adjudicative proceeding.

At all times relevant to this case, the plaintiffs, Harvey DeWees and Roger Dykstra, have been pharmacists licensed under RSA 318:18 (Supp. 1987) and employed at the Osco Drug store on McGregor Street in Manchester, DeWees as a staff pharmacist and Dykstra as his supervisor. DeWees was on duty on January 6, 1983, when he was given a prescription to fill on behalf of one Janet DiIulio. It is undisputed that he typed a label consistent with the prescription and placed both the prescription and the label together with a bottle from the pharmacy's stock, thought to contain the medication prescribed. There was evidence that a pharmacist's assistant placed the label on a vial, which the assistant then filled with the number of tablets of medication called for on the label. In accordance with customary practice, DeWees did not then examine the contents of the vial to make certain it contained the medication actually prescribed. The evidence indicates that in this instance the vial contained the wrong medication, which proved sufficiently harmful to require the recipient's emergency hospitalization.

After the recipient had brought an action for damages in the United States District Court against the corporation operating the pharmacy, her counsel wrote to the pharmacy board on October 15, 1984, *see* RSA 318:2, charging that the pharmacist on duty had been negligent, and requesting an investigation. On March 7, 1985, the board wrote to DeWees that it would hold a hearing the

following month "to discuss the letter of complaint (copy enclosed) alleging a dispensing error by Osco Drug (ie (sic): you)." The board warned DeWees that he would be subject to disciplinary action under RSA 318:29, IV "if the Board [found him] guilty of this violation." It sent a similar but longer letter to Dykstra, citing the board's regulation Ph 704:10 as the basis for his possible liability as "pharmacist-in-charge [with responsibility] for establishing pharmacy policies and procedures [and] for the practice of pharmacy . . ." in the McGregor Street store. Dykstra, too, was advised of possible disciplinary action "depending upon the outcome of [the] hearing."

The letters thus indicated that the board was treating the complaint as giving rise to a "contested case" against each plaintiff within the meaning of the administrative procedure act, see RSA 541-A:1, III (Supp. 1987). Plaintiffs' counsel responded by asking the board for a prehearing conference, see RSA 541-A:16, V, which the board held on April 17, 1985. It is difficult to say what the conference accomplished, for the record gives no indication that the board's presiding officer ever issued an "order incorporating the matters determined at the . . . conference," as required by paragraph V(d). The board did, however, memorialize the proceeding with a transcript, which can be read to suggest that the anticipated subject of the hearing on the merits shifted from the charge of negligence expressed in the complaint letter to some sort of fact-finding inquiry into standard practices for filling prescriptions at the McGregor Street store. Thus, although the board's secretary said on the record at one point that "someone has to prove to me that Mr. DeWees and/or Osco Drug are guilty of willful and gross negligence in their dispensing practices," the board's counsel later stated that the "issue at the hearing, that's all the issue is really just the question of pharmaceutical procedures." To this statement, another board member responded, "That's right, we're going to go to pharmacy practice."

A letter sent to the board by plaintiffs' counsel between the conference and the later hearing on the merits is further support for the view that the hearing was expected to focus on the adequacy of standard procedures for filling prescriptions at the McGregor Street store, rather than on the possibility that DeWees and Dykstra had committed misconduct that might justify disciplinary action against them personally under RSA 318:29, II. The letter stated,

"It is . . . my understanding that the purpose of [the] hearing is to determine whether or not Osco Drug improperly filled a prescription presented to it by Mrs. DiIulio on January 6, 1983. I further understand that the hearing will address the question of whether or not Osco's prescription filling procedures meet acceptable standards as determined by the Board.

* * *

I understand that the Board would like Osco to have Harvey DeWees present at the . . . hearing and that it may in addition bring Roger Dykstra, the manager of Osco's McGregor Street pharmacy and a pharmaceutical expert of its own choosing."

The record certified to us by the board does not indicate that the board made any response to this letter.

The board's silence was all the more significant in light of its failure to issue either a prehearing order, as we have noted, or a further item of notice required by the act, a "reference to the particular sections of the statutes and rules involved." RSA 541-A:16, III(c). (On first glance, it may appear that the letter originally sent to Dykstra functioned as a paragraph III(c) notice, for it referred to his responsibilities as a pharmacist-in-charge, under the regulation Ph 704.10. As we read that regulation, however, it does not impose standards of practice for individual pharmacists, for a violation of which Dykstra's license to practice pharmacy could be suspended. The regulation appears merely to amplify RSA 318:38, I, which requires that a store's owner must employ a pharmacist-in-charge who has accepted administrative responsibilities before the board will issue the owner a permit to operate the store, *see id.*, as distinguished from a permit issued to a pharmacist personally, entitling him to practice pharmacy. *See* RSA 318:18 (Supp. 1987).) Because the board never specified charges against the plaintiffs in the manner required by the administrative procedure act, the board's silence following counsel's letter could reasonably have been taken to indicate agreement that the hearing would concern the operation of the Osco Drug store, rather than the possible misconduct of DeWees and Dykstra individually.

This impression was confirmed by opening remarks at the hearing itself, held on May 15, 1985. The presiding officer announced that the board would address "the letter of complaint alleging a dispensing error made by Mr. DeWees" and went on to ask the parties "to be prepared to discuss and review . . . the policies and procedures governing the dispensing practices followed by this

pharmacy and the staff pharmacist." A moment later the presiding officer said, "I believe that the reason for this hearing is to find out what the policies and procedures of that store are/were at that time and are now at present." As the hearing progressed, attention focused on the practice of employing an assistant or technician to fill the vial, without a pharmacist thereafter checking the contents of the vial against the label or prescription.

The indications that the board's concern was with Osco's operation, rather than with each pharmacist's individual professional liability, were contravened on June 25, 1985, however, when the board took disciplinary action against DeWees and Dykstra by separate written decisions with the following identical sections:

> *"Procedural History*—As a result of a complaint made on behalf of Janet DiIulio, and the subsequent investigation, a disciplinary hearing was held on May 15, 1985.
>
> *Findings of Fact*—The pharmacist on duty does not do a final check after the prescription is physically filled by a paraprofessional. The pharmacist's last check control occurs when he/she places the stock bottle on top of the prescription label. This policy was in effect at the time the error was made (January, 1983) and current Policy and Procedures still do not recognize the problem nor have any steps been taken to remedy this situation. Harvey DeWees was the pharmacist who made the error. Roger Dykstra is the pharmacist-in-charge of Osco Drug, Inc., 122 McGregor St., Manchester, NH.
>
> *Conclusions of Law*—As a result of the findings of fact listed above, the Board hereby finds that [DeWees and Dykstra] violated the following provisions of law.
>
> a) RSA 318:29 V(g)—to wit, 'unprofessional conduct which includes, but is not limited to, . . . or other acts or omissions which, in the opinion of the board, pose a threat to the well-being or the safety of the public.'"

The "Conclusions of Law" issued in Dykstra's case went on to explain that he was liable under RSA 318:38, I, which provides that the "pharmacist-in-charge has . . . responsibility" for safe operation and compliance with the law. As we noted above, this statutory provision is addressed by the board's regulation Ph 704.10, which the board found to have been violated in its subsections (a), (b), (e), (f) and (h), mandating responsibility, respectively, for establishing procedures, for supervising personnel, and for ensuring "good

pharmaceutical practices," conformance with prescriptions, and compliance with the law.

In each case, a further section of the decision, entitled "Disciplinary Action," stated that a penalty was imposed "in accordance with RSA 318:29 I(b), II(d) and IV(b)." The board suspended each plaintiff's license to engage in pharmacy for twelve months, of which eleven months were "stayed" in DeWees's case, and nine in the case of Dykstra.

The plaintiffs availed themselves of their statutory rights of appeal to the superior court under RSA 318:32. Although the superior court took no testimony, the record was supplemented by the copies of letters exchanged between the board and the "New Hampshire Pharmaceutical Association," in which a representative of the association asked the board to adopt regulations to "measure and insure competency levels of supportive personnel." The board responded with its counsel's advice that it "did not have the authority to promulgate rules which would license, certify, or otherwise regulate 'pharmacy technicians.'" The court did not rely on this supplementary evidence, however, and dismissed the appeals on the basis of the original record. The further joint appeal to this court followed.

The plaintiffs have briefed three issues. They attack the board's findings as being against the weight of the evidence; they challenge the "unprofessional conduct" standard, along with the standards expressed in subsidiary regulations, as unconstitutionally vague in failing either to warn of what is required when a pharmacist uses an assistant, or to place ascertainable limits on the board's exercise of its administrative discretion; and they dispute the reasonableness of the periods of disciplinary suspension. Because an examination of the first of these grounds leads us to reverse the judgment affirming the board's orders, we do not reach the constitutional or penalty issues.

The challenge based on the weight of the evidence is essentially an argument that the board could not reasonably have found that the procedure followed by DeWees and approved by Dykstra was negligent. As against the evidence that an error occurred in filling the DiIulio prescription, the plaintiffs maintain that there is no indication that they ever allowed their lay assistants to perform any acts requiring professional judgment, and they emphasize that no serious prescription mistakes prior to the one in question had occurred at the McGregor Street pharmacy in ten years, during which the pharmacists operating there had followed the same procedure that DeWees followed in this instance. A practice that

has caused so little harm, they argue, can not reasonably be condemned as unprofessional.

Although we might pass upon the merits of this argument, some of the assumptions on which it rests reveal legal errors more immediate than those expressly addressed by the plaintiffs, errors which require us to reverse the board's orders. *See Rogers v. Richmond*, 365 U.S. 534, 540 (1961) (case raising issues about habeas procedure disposed of on more immediate issues of legal error). The first assumption is sound enough, that negligence was at the heart of the board's findings against the plaintiffs. Although it is true that the board never used the term "negligence" in its orders, negligence is what the board must have intended to indicate when it found that DeWees "did not make a final check after a paraprofessional had completed the filling of the prescription for Mrs. DiIulio," and that Dykstra had "failed to establish policy and procedures for the safe dispensing of prescriptions to the public."

The second assumption is one of law, that under the statutes cited by the board in its "Conclusions of Law" as authority for its orders, well-grounded findings of negligence would entitle the board to take disciplinary action. It is this assumption that can not withstand scrutiny, and its analysis reveals the legal errors that we cannot ignore.

We look first to the statutes relied upon in the "Conclusions of Law," starting with "RSA 318:29 V(g)." Although each order included this citation to indicate the basis for penalizing the plaintiffs' "unprofessional conduct," the citation does not even survive a reading of the statute. RSA 318:29, V has no subparagraph (g), and its terms have no application to disciplinary action against pharmacists like the plaintiffs. Paragraph V deals solely with a suspension or revocation of "a pharmacy permit," *id.*, "to maintain and operate a pharmacy," RSA 318:38, I, not with licenses issued to individuals to practice as pharmacists, *see* RSA 318:12. Paragraph V deals with stores, not with people. It empowers the board to consider suspending the permit for Osco Drug to operate a pharmacy at 122 McGregor Street; it does not authorize any action against the plaintiffs.

There is, to be sure, more to RSA 318:29 than paragraph V. Paragraph II(c) includes a provision for disciplinary action against individual pharmacists who engage in "unprofessional conduct," and if the board's only mistake in this matter were merely in citing paragraph V when it should have cited the "unprofessional conduct" provision of paragraph II we would not require reversal of the orders. But the error goes deeper than that. For if the board

had cited paragraph II(c) as its authority for suspending the plaintiffs' licenses, we would then be forced to ask whether the board's findings of negligence against each plaintiff could amount to "unprofessional conduct" within the meaning of the statute. The answer would be no, that under basic rules of statutory construction negligence is not "unprofessional conduct" as the term is used in paragraph II(c). Therefore, the board's findings would not, and do not, justify disciplinary action against the plaintiffs on that statutory authority.

 While the term "unprofessional conduct" may be difficult to define, it occurs in a statutory context that makes it comparatively easy to determine at least what the language does not mean. The crucial features of that context are not only paragraph II(c), which authorizes disciplinary proceedings against a pharmacist guilty of "unprofessional conduct," but also paragraph II(d), which expressly empowers the board to proceed against a pharmacist who has exhibited "[u]nfitness or incompetency by reason of negligent habits . . . or [who has committed] negligent . . . acts . . . inconsistent with the health or safety" of the pharmacist's customers. The contrast between these provisions is significant under the customary rule of statutory construction that the legislature does not enact unnecessary and duplicative provisions, see *Trustees & c. Academy v. Exeter*, 92 N.H. 473, 482, 33 A.2d 665, 671 (1943), from which it follows that "unprofessional conduct" by a pharmacist under subparagraph (c) must mean something different from "negligence" under subparagraph (d). Thus, a pharmacist who has been negligent may be penalized for his negligence, but he may not be penalized for "unprofessional conduct."

(The analysis may be different under RSA 318:29, V, relating to pharmacy permits, which provides that such a permit may be suspended or revoked for "unprofessional conduct" within the pharmacy, which is defined to include "acts or omissions [posing] a threat to the well-being or the safety of the public." *Id.* The board relied on this definition but was mistaken in doing so, because, as we saw above, paragraph V has no application to an individual pharmacist's license. This example illustrates the statute's inexcusably confusing draftsmanship, for which we may properly sympathize with the board that has to work with it. But sympathy does not cure legal error.)

While the board's negligence findings cannot, then, support a suspension of either plaintiff's license for "unprofessional conduct," there is still the question whether negligence was enough to authorize the board's action against Dykstra on the further ground

stated in the "Conclusions of Law," that he was liable under RSA 318:38, I, and the board's corresponding regulation Ph 704.10. The answer, again, must be no as a matter of law.

We noted before that RSA 318:38, I, provides for the issuance of permits "to maintain and operate a pharmacy," *id.*, as distinguished from licenses to individuals to act as pharmacists. This statute authorized the board to issue the license to the corporation known colloquially as "Osco Drug," to operate the McGregor Street pharmacy. One of the statutory conditions of Osco's license is that its "designated pharmacist-in-charge [, Dykstra, must have] accepted the responsibility for the safe . . . operation of a pharmacy . . . ." RSA 318:38, I. A failure of the pharmacist-in-charge to meet this responsibility would, therefore, be a breach of the pharmacy permit's conditions, for which the permit would be subject to suspension or revocation under RSA 318:29, V, as we have seen. Breach of a condition imposed by RSA 318:38, I, is not, however, a basis for revoking the individual license of the pharmacist-in-charge to practice pharmacy as an individual. *Compare* RSA 318:29, II *with* RSA 318:29, V. We assume that this distinction is intended to reflect the fact that a pharmacist-in-charge might well fail in his administrative duty to police the pharmacists working under him, without thereby indicating any incompetence to practice pharmacy directly as an individual. (Needless to say, if the pharmacist-in-charge failed to meet his responsibilities for reasons that would also subject his individual license to suspension or revocation, the board could proceed against him under RSA 318:29, II at the same time it proceeded under RSA 318:38, I, against the holder of the store's permit.) Hence, the board's finding that Dykstra had failed to meet his responsibilities under RSA 318:38, I, and its interpretive regulations, was not a legal basis to suspend Dykstra's personal license.

Thus far we have seen that none of the statutes or regulations cited by the board in its "Conclusions of Law" as support for disciplinary action authorized any action against pharmacists personally. We have also seen that the board's orders cannot be saved by assuming the board meant to find that the plaintiffs had committed "unprofessional conduct" under RSA 318:29, II(c), since the board's only factual findings were of negligence, a subject distinct from the subject of "unprofessional conduct" as used in paragraph II(c).

A further issue remains, however. Given the fact that the board apparently did find that the plaintiffs had been negligent, should we not treat the order as if the board had made a finding that each

plaintiff was responsible for a negligent omission within the meaning of RSA 318:29, II(d) and go on to consider the sufficiency of the record to support the finding? The board did, after all, cite paragraph II(d) within its orders even though it did not refer to it among its "Conclusions of Law" as a statutory provision that the plaintiffs had violated.

We decline to follow such a course for the simple reason noted before, that the board never charged the plaintiffs with negligence under paragraph II(d). As we have seen, the board never fulfilled its obligation under the administrative procedure act to issue a written notice of the "particular sections of the statutes and rules" that might be the basis for personal disciplinary action. RSA 541-A:16, III(c). Nor was the failure to charge them just a technicality that the plaintiffs themselves may be said to have waived after receiving adequate actual notice of the board's intentions to take action against them for negligence. The board not only ignored paragraph III(c), but held a prehearing conference that left an uncorrected impression that the board's concern was with Osco's procedures and Osco's liability, rather than with any personal liability of the plaintiffs for their acts or omissions in the practice of pharmacy.

If this court were now to reconstruct the record and pretend that charges of negligence were properly subject to litigation at the May 15, 1985 hearing, we would be condoning a pervasive breakdown of the orderly procedure that the plain provisions of RSA chapter 541-A were enacted to ensure. Our position, quite the contrary, must be to insist on enforcement of the act by reversing for those legal errors that have become patent as we have addressed the plaintiff's claims, and by refusing to expend judicial time on appellate issues that might well never have arisen if the act had been followed. While we do not know what result would have been achieved by the board's compliance with the statute, or by counsel's vigilance in objecting to the board's errors, it seems safe to say that the case would be in a very different posture from what we see today.

■ The failure of the board to issue any notice of the specific statutes or rules that the plaintiffs were thought to have violated has a further consequence when we come to consider the relief to which the plaintiffs are entitled. We must not only reverse the superior court's judgment and require that the orders of June 25, 1985, be vacated, but also declare that when those orders are vacated there will be no pending statutory process upon which

further action can be taken, unless at this late date the board is to institute further action against the plaintiffs. Whether the board can or should do so are questions that are not before us and on which we express no opinions. We will add, however, that if these cases have served any useful purpose, it has been to demonstrate the need for regulating the employment of pharmacists' assistants, a subject on which the board has issued no regulations and, apparently on advice of counsel, presently intends to issue none. If such is the board's position, the board may properly reconsider it. The issue is not whether the board has the statutory authority to license such assistants, but whether the board should provide standards for the practice of its licensed pharmacists when they employ assistants in the conduct of their professional work. If the board is prepared to address that issue now, we will have reason to anticipate fewer appeals in the future claiming the unconstitutional vagueness of "unprofessional conduct" and the unenforceability of the board's orders.

*Orders vacated.*

All concurred.