Board of Pharmacy
No. 97-522

## APPEAL OF WILLIAM H. MORGAN, R.PH.

(New Hampshire Board of Pharmacy)

July 21, 1999

*William R. Loftus, P.C.*, of Lebanon (*William R. Loftus* on the brief and orally), for the petitioner.

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State, as *amicus curiae*.

HORTON, J. The petitioner, William H. Morgan, R.Ph., appeals a disciplinary order of the New Hampshire Board of Pharmacy (board) imposing a fine and prohibiting him from serving as a pharmacist-in-charge. *See* RSA 318:29, II(c), (d) (1995). On appeal, he alleges a myriad of legal and constitutional errors. We affirm.

The petitioner is a licensed New Hampshire pharmacist. In 1991, he purchased a pharmacy in Littleton and became the designated pharmacist-in-charge pursuant to RSA 318:38, I (1995). In July

1995, Peter Grasso, the board's chief compliance inspector, visited the pharmacy in the course of an investigation unrelated to the petitioner. During his visit, Grasso observed that a number of the pharmacy's records were inaccurate and disorganized and subsequently recommended an accountability audit. Investigators conducted an audit in October 1995. Based on the audit, Grasso recommended that the board initiate disciplinary proceedings against the petitioner.

The board commenced proceedings against the petitioner for engaging in repeated negligent misconduct, *see* RSA 318:29, II(c), or willful and repeated misconduct, *see* RSA 318:29, II(g). The board specifically alleged ten counts of failing to maintain accurate and complete controlled drug records, four counts of dispensing controlled drugs in unlawful quantities, and one count of dispensing incorrect medication. The board also questioned the petitioner's competence both as a pharmacist-in-charge and as a pharmacist under RSA 318:29, II(d). After a hearing in September 1996, the board found that the evidence sustained all of the charges and that the petitioner had demonstrated a lack of professional competence. Accordingly, in December 1996, the board suspended his license for twenty-four months, revoked his ability to serve as pharmacist-in-charge for the same period, imposed a $5,000 administrative fine, and ordered him to complete the New Hampshire pharmacy jurisprudence examination.

The petitioner moved for rehearing, which the board granted in January 1997, vacating its December decision and order. The board issued a new decision and order based on the existing record in April 1997. It found that the evidence sustained the charges related to recordkeeping and data entry, but was insufficient to prove willful misconduct in the prescription of controlled substances. The board restricted the petitioner's pharmacist license to preclude him from serving as pharmacist-in-charge indefinitely and imposed a $1,000 fine.

## I. Inspection Regulations

We first address the petitioner's contention that the statutes governing the board's authority and procedure to inspect pharmacies are impermissibly vague because they do not adequately notify licensees of the standard for evaluating compliance with the law.

Although the petitioner cited the State and Federal Constitutions below, he failed to invoke specifically a provision of the State Constitution in his brief. Because he did not unambiguously and

specifically raise the vagueness issue grounded in the due process provision of the New Hampshire Constitution, we address only his federal claim. *See State v. Dellorfano*, 128 N.H. 628, 632-33, 517 A.2d 1163, 1166 (1986).

 Under federal law, the degree of vagueness constitutionally tolerated depends in part upon the nature of the regulation. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982). Statutes with criminal or quasi-criminal penalties are reviewed under a more stringent standard than those with civil penalties. *Id.* at 498-99. We will assume for the purposes of this appeal that the relevant statutes here are at least quasi-criminal, *cf. In re Ruffalo*, 390 U.S. 544, 551 (1968) (attorney disbarment proceeding is quasi-criminal), and thus the more stringent standard applies. A statute is impermissibly vague if it does not define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Clinical Leasing Service, Inc.*, 925 F.2d 120, 122 (5th Cir. 1991) (quotation omitted).

Chapter 318 requires, *inter alia*, that licensed pharmacies and pharmacists-in-charge comply "with all local, state, and federal pharmacy and drug laws." RSA 318:1, X (1995); *see* RSA 318:38. Upon a reasonable basis, RSA 318:30, III, "[t]he board may investigate possible misconduct by licensees . . . and any other matters governed by the provisions of [RSA chapter 318] and RSA 318-B." RSA 318:30, I (1995). Charged with the duty to enforce the statute, the board is authorized to enter pharmacies to investigate possible violations. *See* RSA 318:8 (Supp. 1998). Similarly, RSA 318-B:25 (Supp. 1998) charges, *inter alia*, pharmacy board officials with the responsibility to enforce RSA chapter 318-B and authorizes on-site inspections to ensure compliance. Chapter 318-B governs the manufacture, possession, control, sale, purchase, prescription, administration, and transportation of controlled substances. *See* RSA 318-B:2 (1995). The language of chapters 318 and 318-B clearly notifies licensees that they have a duty to comply with all federal, State, and local pharmacy and drug laws and authorizes board inspections to enforce that duty.

The petitioner argues that since perfect compliance with the laws is impossible, express standards are necessary to inform licensees what degree of noncompliance will subject them to penalties under RSA chapters 318 and 318-B. We disagree. RSA chapters 318 and 318-B impose on licensees, whether pharmacists or pharmacies, an

unequivocal duty to comply with pharmacy and drug law. *Cf. Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947). Implicitly, therefore, any noncompliance with applicable law will potentially subject a licensee to investigation and prosecution.

■ It is because perfect compliance is rarely possible, as the board investigators conceded, that decisions to investigate and prosecute are committed to the sound discretion of the agency. *See Lewis v. United States*, 70 F.3d 597, 601 (Fed. Cir. 1995). By virtue of its specialized knowledge and authority, the agency "alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by [the legislature] and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." *Moog Industries, Inc. v. F.T.C.*, 355 U.S. 411, 413 (1958) (upholding agency decision to prosecute firm but not its competitors for violating antitrust law). Here, board inspectors testified that various factors informed the agency's decision whether to prosecute, including frequency and gravity of violations and efforts by the licensee to improve compliance. In such cases, we defer to the board's policy.

The petitioner argues that under *Appeal of Global Moving & Storage of N.H., Inc.*, 122 N.H. 784, 451 A.2d 167 (1982), a party is entitled to rely on a long-standing administrative practice, namely, the board's alleged practice of excusing minor violations. *Global Moving*, 122 N.H. at 788, 451 A.2d at 170. In *Global Moving*, agency officials disclosed an agency practice to the parties and advised them to rely on it, whereupon this court held that reliance was reasonable. *Id.* at 788, 451 A.2d at 170. Here, the board noted that even if the violations could be considered "technical," "taken as a whole, and in light of [the petitioner's] failure to implement systematic procedures reasonably designed to prevent or correct the occurrence of such errors, they become evidence of a systematic failure by [the petitioner] which is neither trivial nor normative." There is no evidence in the record, nor does the petitioner assert any, that the board affirmatively disclosed to licensees that it had a policy of excusing violations of the nature and number involved in this case. Rather, the board expressly noted otherwise.

## II. Illegal Search

The petitioner next argues that the October 1995 audit constituted an illegal administrative search under the Federal and State Constitutions. *See* U.S. CONST. amend. IV; N.H. CONST. pt. I, art. 19. Because the Federal Constitution provides no greater protection

in this area, *see State v. Turmelle*, 132 N.H. 148, 153, 562 A.2d 196, 198 (1989), we need not undertake a separate federal analysis. We will address the State constitutional claim and cite to federal law only as an aid in our analysis. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 351 (1983).

■ As a preliminary matter, we reject the petitioner's contention that the absence of promulgated administrative rules governing inspections invalidates the audit. He argues that the inspectors followed procedures contained in an audit form, handbook, and lawbook that were not properly enacted as rules. *See* RSA 541-A:22, I. The audit form is prepared for inspectors and instructs them to perform specific tasks during the course of an audit. Nothing on the form indicates a change in private rights or rules binding on the public contrary to existing laws or regulations. We conclude that the form is not subject to the statutory requirements for the promulgation of agency rules. *See* RSA 541-A:1, XV (1997). Likewise, evidence indicates that the inspector's handbook was an internal procedural manual, applicable only to agency employees, and thus not subject to statutory promulgation. *See id.* The record does not contain adequate evidence for review of the lawbook distributed by the board to all pharmacists, and we decline to address it. *See* RSA 541:14 (1997) (case shall be determined upon record and evidence transferred).

■ Absent a recognized exception, a warrantless search by a government body is *per se* unreasonable and invalid. *See State v. Plante*, 134 N.H. 585, 588, 594 A.2d 165, 166 (1991). In New Hampshire, we have explicitly recognized an administrative search exception. *See Turmelle*, 132 N.H. at 152, 562 A.2d at 199. Before this exception applies, three criteria must be satisfied: "First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further the regulatory scheme. Finally, the implementation of the statutory inspection program must provide a constitutionally adequate substitute for a warrant." *Id.* at 153, 562 A.2d at 199 (citations, quotations, and brackets omitted).

With regard to the first prong, New Hampshire has long required pharmacists to keep accurate records of sales of certain drugs. *See* Laws 1921, 122:29. Since at least 1909, New Hampshire has maintained laws regulating the dispensation and sale of dangerous drugs, and the maintenance of proper records. *See* Laws 1909, 162:2, :3. The State clearly has a long-recognized substantial interest in

regulating the sale and distribution of drugs to deter their illicit use whenever possible and to trace their movement through the channels of commerce. *See Com. v. Lipomi*, 432 N.E.2d 86, 93 (Mass. 1982).

Second, requiring a warrant before an inspection would impede inspectors' abilities to detect faulty records and illegal dispensation of drugs and to quickly investigate wrongdoing that may pose a threat to public safety. Warrantless access to records is necessary to ensure that the mere prospect of inspections will prompt otherwise questionable licensees to comply with the law. *Cf. Hosto v. Brickell*, 577 S.W.2d 401, 405 (Ark. 1979).

■ Third, we consider whether the statutory scheme is sufficiently limited in time, place, and scope as to constitute an adequate substitute for a warrant. Under RSA chapter 318, board members and board inspectors and investigators are authorized to enter pharmacies. RSA 318:8. Access is limited in time to business hours and in scope to records of sale and disposition of drugs and places where drugs, medicines, poisons, and hypodermic devices are located. *Id.* Likewise, under RSA chapter 318-B, only certain law enforcement officers and prosecutors are authorized to enter places handling controlled substances. RSA 318-B:25. Access is limited to "normal business hours" and to "original records or prescriptions." *Id.* We conclude that the statutory scheme provides sufficient restraint on arbitrary agency action to satisfy the third prong. *Cf. State v. Welch*, 626 A.2d 1105, 1111-12 (Vt. 1992). Because all three prongs have been satisfied, the administrative search exception applies, and the October 1995 audit did not violate the petitioner's constitutional rights.

### III. Legal Errors

Turning to the petitioner's allegations of legal error, we are mindful that the party seeking to set aside an order of the board must show the order is clearly unreasonable or unlawful. RSA 541:13 (1997). We will overturn an order only if there are errors of law, or if we are satisfied by a clear preponderance of the evidence that the order is unjust or unreasonable. *Id.*

First, the petitioner argues that the board disclosed contents of prescriptions during the proceedings in violation of RSA 318-B:12, II (1995). RSA 318-B:12, II prohibits, *inter alia*, board officials or representatives from divulging prescription orders and records inspected in the course of their duties "except in connection with a prosecution or proceeding . . . before a licensing . . . board or

officer, to which prosecution or proceeding the person to whom such prescriptions, orders or records relate is a party."

 This court is the final arbiter of legislative intent as expressed in the words of a statute considered as a whole. *Atwood v. Owens*, 142 N.H. 396, 398, 702 A.2d 333, 335 (1997). We look to the plain meaning of the words when possible but assume that the legislature would not enact statutory language that leads to an absurd result. *See id.* The petitioner contends that the "person to whom such prescriptions . . . relate" refers to the customer, and therefore the customer's consent must be obtained before the prescriptions can be disclosed during disciplinary hearings. We disagree. Such an interpretation could prevent the board from prosecuting licensees who engaged in misconduct regarding their customers' records. We decline to accept such an unreasonable result. *Cf. Appeal of HCA Parkland Medical Ctr.*, 143 N.H. 92, 95, 719 A.2d 619, 622 (1998). Rather, we construe RSA 318-B:12, II as allowing the disclosure of otherwise confidential records during agency proceedings when relevant to the conduct of a licensee subject to a board action or proceeding.

The petitioner next alleges that by failing to file an incorporation statement pursuant to RSA 541-A:12 (1997) to incorporate federal law related to pharmacy practice in the agency's jurisdiction, the board "cannot enforce the regulations which incorporate these federal standards" because such regulations would be invalid. He cites a number of agency regulations, including New Hampshire Code of Administrative Rules Ph 701.01, which requires pharmacists to comply with, *inter alia*, Title 21 of the United States Code. *See* N.H. ADMIN. RULES, Ph 701.01(d) (prior law). We confine our review to rules that were relevant to the board's order.

 Under RSA 541-A:12, III, an agency must file an incorporation by reference statement that conforms to the requirements of RSA 541-A:12, IV, if the agency "incorporates into its rules any document prepared by any entity outside the agency." Even assuming that the statute applies in this instance, "[p]romulgation of a rule pursuant to RSA chapter 541-A is not necessary to carry out what a statute authorizes on its face." *Petition of Smith*, 139 N.H. 299, 307, 652 A.2d 154, 160 (1994) (quotation omitted). Here, the board is statutorily authorized to take disciplinary action against licensees for, *inter alia*, violations of federal pharmacy law and regulation. *See* RSA 318:29, II(g). Hence, we conclude that the board was properly authorized to take disciplinary action against

the petitioner for violations of federal law. *See also* N.H. ADMIN. RULES, Ls-A 402.24(b)(2).

Next, citing *DeWees v. New Hampshire Board of Pharmacy*, 130 N.H. 396, 539 A.2d 721 (1988), the petitioner contends that in adopting a number of Grasso's proposed conclusions of law, the board confused different standards of conduct, *i.e.*, professional "misconduct," RSA 318:29, II, with "willful or repeated," RSA 318:29, II(g). Several conclusions of law charge the petitioner with willfully violating certain recordkeeping requirements, which "constitutes an act of professional misconduct as defined by RSA 318:29, II(g)."

RSA 318:29, II states, in relevant part, that "[m]isconduct sufficient to support disciplinary proceedings . . . shall include: . . . [w]illful or repeated violation of any provision of this chapter, any substantive rule of the board, or any other federal, state, or local drug or pharmacy-related law, rule, or regulation." Accordingly, "misconduct" does not describe a standard of conduct but refers generally to improper conduct or wrong behavior. *Cf. State v. O'Hara*, 211 So. 2d 641, 648 (La. 1968). RSA 318:29, II enumerates specific forms of misconduct, including "willful or repeated violation" of law. As the board recognized, a "willful" violation is "misconduct." *DeWees* is inapposite because, in that case, the board improperly penalized a pharmacist accused of negligent acts for unprofessional conduct, even though "unprofessional conduct" and "negligence" were enumerated as separate forms of misconduct. *See DeWees*, 130 N.H. at 403, 539 A.2d at 725-26.

Next, the petitioner argues the board erred in defining willful as "the absence of showing circumstances beyond a person's control," contrary to our holding in *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 498 A.2d 297 (1985).

In *Ives*, we defined "willful act" as "a voluntary act committed with an intent to cause its results" for the purpose of ascertaining an employer's liability for withholding wages. *Ives*, 126 N.H. at 801, 498 A.2d at 301. We did not indicate an intent to define "willful" the same in every context. *See id.*; BLACK'S LAW DICTIONARY 1599-1600 (6th ed. 1990). Willful "is a word of many meanings depending upon the context in which it is used." *Zimberg v. United States*, 142 F.2d 132, 137 (1st Cir. 1944) (quotation omitted). In *Ives*, we made clear that our definition was meant to exclude accidental acts or voluntary acts committed by mistake of fact. *See Ives*, 126 N.H. at 801, 498 A.2d at 301. Indeed, "willful" can denote an act that is not accidental. *See United States v. Murdock*, 290 U.S. 389, 394 (1933), *overruled on other grounds by Murphy v. Waterfront Comm'n*, 378

U.S. 52, 70-73 (1964); *cf. Appeal of Metropolitan Prop. &Liabil. Ins. Co.*, 120 N.H. 733, 736, 422 A.2d 1037, 1039 (1980).

■ Here, the board found that the petitioner willfully violated specific recordkeeping and data entry statutes because no "circumstances beyond his reasonable control prevented the timely preparation and retention" of a drug inventory and no "causes beyond his reasonable control prevented him from maintaining" drug prescriptions. The board's conclusions represent different ways of expressing "willful" as voluntary. The question is whether "willful," in the context of professional misconduct under RSA 318:29, II, need include the element of intent to cause the result of a voluntary act. We defer to an administrative interpretation of a statute unless it is plainly incorrect. *Appeal of Pritchard*, 137 N.H. 291, 294, 627 A.2d 102, 103 (1993). Because RSA chapter 318 does not define "willful" and the board's interpretation is consistent with the word's ordinary meaning, we cannot say that the board's interpretation is plainly incorrect.

We turn to the petitioner's arguments that the board's December 1996 and April 1997 orders were legally deficient. As the order on appeal is the April 1997 decision, we will address only issues raised with respect to that order. *See* RSA 541:6 (1997); *cf.* RSA 541:16 (1997) (if appealed order is modified by agency, modified order replaces previous order).

The petitioner contends that there was no evidence he personally failed to enter data in violation of 21 C.F.R. § 1306.22(b)(1) and New Hampshire Code of Administrative Rules Ph 703.05(d)(1) (prior law), and therefore he was not personally liable. Those provisions require any automated data processing system used for the storage of prescription refill information to provide on-line retrieval of specific data from the original prescription orders and orders currently authorized for refilling. *See* 21 C.F.R. § 1306.22(b)(1); N.H. ADMIN. RULES, Ph 703.05(d)(1) (prior law).

■ As the pharmacist-in-charge, the petitioner was "responsible for the practice of pharmacy in and by that pharmacy, including, but not limited to, compliance with all local, state, and federal pharmacy and drug laws, and . . . responsible for the operation of the pharmacy in the best interests of the public." RSA 318:1, X. The statute confers upon the pharmacist-in-charge a duty not placed on a pharmacist, to ensure that the pharmacy and those who practice in it comply with all pharmacy and drug laws, including 21 C.F.R. § 1306.22 and New Hampshire Code of Administrative Rules, Ph 703.05. Hence, the petitioner's status as a pharmacist-in-charge

imposed on him heightened responsibilities under the law, compared to those imposed on a pharmacist, which he cannot escape by denying personal involvement in faulty data entry.

The petitioner argues that under *DeWees*, a pharmacist-in-charge cannot be held liable for violations associated with the pharmacy. In *DeWees*, the board revoked a pharmacist's individual license under RSA 318:38, I, which provides that the breach of a pharmacist-in-charge's duties is a basis for revoking the pharmacy's license. We held that the board erred because a pharmacist cannot be penalized under a statutory provision applicable to pharmacies. *DeWees*, 130 N.H. at 404, 539 A.2d at 726-27. Here, the petitioner was charged under RSA 318:29, II, applicable to "any licensee," including pharmacists-in-charge, and punished under RSA 318:29, IV, which applies to individual practitioners. Unlike the pharmacist in *DeWees*, the petitioner was charged and penalized under the proper statutes. His reliance on *DeWees* is misplaced.

Next, we address the petitioner's additional allegations that his State and Federal due process rights have been violated. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. V, XIV. Although he cites a number of constitutional provisions in his brief, he conducts no constitutional analysis showing how the provisions apply to his case. Because we are unable to discern constitutional error on the face of his arguments, we review them for legal error only. *Cf. State v. Chick*, 141 N.H. 503, 504, 688 A.2d 553, 554 (1996); *State v. Plante*, 134 N.H. 456, 459, 594 A.2d 1279, 1282 (1991).

 The petitioner argues that the board failed to supply documents from its files. He first asserts that under board rules he was entitled to original documents related to the August and October 1995 audits, which were seized by federal officials in January 1996. *See* N.H. ADMIN. RULES, Ph 204.07(a) (prior law) (board must provide parties "access to any statements, documents, or other information in [its] files pertinent to an adjudicative proceeding . . . ."). The record indicates that neither the petitioner nor the board had access to the originals, but copies were apparently available and submitted as exhibits. The petitioner does not show how the original, as opposed to copied, documents were "pertinent" to the proceeding, beyond purporting to show bad faith prosecution. He had no less of an opportunity than Grasso to present witnesses or provide evidence to refute the substantive charges, and his counsel expressly declined to review specific documents to point out any irregularities that may have been the result of prosecutorial misconduct.

The petitioner also argues that the board was required under RSA 541-A:16, II(a) (1997) to disclose a handbook prepared for board inspectors, notes from prior inspections, and drug inventory. RSA 541-A:16, II(a) requires an agency to "[m]ake available to the public all written statements of policy or interpretations, other than rules, formulated or used by the agency in the discharge of its functions." Because the petitioner makes only a conclusory claim in his brief that the handbook, notes, and inventory were subject to RSA 541-A:16, II(a), and the issue was not developed to any greater degree below, his argument is unpersuasive.

Next, the petitioner alleges that the board erred in refusing to allow him to depose Grasso or to examine him as a witness, although Grasso was allowed to offer comments in presenting exhibits. The gist of the petitioner's complaint is that he was unable to probe Grasso's motives in investigating him. The board rejected the petitioner's assertion that Grasso's testimony was necessary to show that Grasso acted out of personal animosity.

Even though the Rules of Evidence do not apply to administrative tribunals, the agency can exclude privileged, irrelevant, immaterial, unreliable, or incompetent evidence. *Petition of Grimm*, 138 N.H. at 54, 635 A.2d at 464. When considering the propriety of an investigation or prosecution by a government official, only the official's conduct, not his motivation, is relevant. *Cf. State v. Rednor*, 497 A.2d 544, 547 (N.J. Super. Ct. App. Div. 1985). The board found no evidence of prosecutorial misconduct and based its decision solely on the evidence in the record. *Cf. Petition of Grimm*, 138 N.H. 42, 52, 635 A.2d 456, 463 (1993) (party alleging bias in agency officials has burden to present sufficient evidence). The petitioner otherwise remained free to call other witnesses. We do not think the board improperly exercised its broad discretion in refusing to allow him to depose or examine Grasso on his motives. *Cf. Delavan v. Board of Dental Examiners*, 620 So. 2d 13, 16 (Ala. Civ. App. 1992).

Similarly, while Grasso's comments are extensive, they pertain primarily to documentary exhibits. Such comments are not prohibited by the relatively greater informality accorded to agency proceedings, where the evidence is mainly documentary rather than testimonial, *cf. Appeal of Plantier*, 126 N.H. 500, 508, 494 A.2d 270, 274 (1985), and capable of independent evaluation by the board using its expertise, *cf. Appeal of Dell*, 140 N.H. 484, 496, 668 A.2d 1024, 1033-34 (1995); *Petition of Grimm*, 138 N.H at 53, 635 A.2d at 464.

Next, the petitioner alleges that the board did not take proper official notice of computer software used by the pharmacy and that it improperly altered its findings of fact absent new evidence. Assuming his allegations have merit, we must find that the violations caused material prejudice to the petitioner in order to set aside the board's order. *See Appeal of Courville*, 139 N.H. 119, 130, 649 A.2d 1233, 1241 (1994). The petitioner fails to allege, and we do not find, that he was prejudiced by the board's actions. Accordingly, we reject his arguments.

Lastly, the petitioner's notice of appeal raises due process arguments that were not briefed and are deemed waived. *See Cole v. Hobson*, 143 N.H. 14, 17, 719 A.2d 560, 562 (1998).

*IV. Sanction*

Finally, the petitioner asserts that even though he was found guilty of fewer charges in the second order, the board, by indefinitely prohibiting him from serving as pharmacist-in-charge, unfairly imposed a more severe sanction than originally imposed. He argues that the sanction imposed is disproportionate to the offense and violative of Part I, Article 18 of the State Constitution.

We will set aside an administrative sanction only "if it is so harsh or excessive as to be unreasonable or to constitute an abuse of discretion." *Appeal of Metropolitan Prop. & Liabil. Ins. Co.*, 120 N.H. 733, 736, 422 A.2d 1037, 1039 (1980). Recognizing that appropriate sanctions are necessarily tailored to the facts of each case, we will substitute our judgment for that of the agency only in exceptional cases. *Id.* at 736-37, 422 A.2d at 1040.

The petitioner was charged with fifteen counts of misconduct, each encompassing multiple violations of pharmacy and drug law. While acknowledging that as pharmacist-in-charge he was ultimately responsible for recordkeeping, he admitted that there were mistakes in the records, that he did not know how to perform biennial inventories correctly or the "right way" to void transactions, and that he was "guilty of not correct[ly] . . . voiding [transactions] so that my records are accurate." To defend himself against charges that he had improperly diverted controlled drugs, he asserted that the pharmacy's records were too unreliable to prove the diversion. Additionally, ample documentary evidence supported the board's findings.

Initially finding the petitioner guilty of all charges, the board imposed a $5,000 fine, suspended his pharmacist license, and

restricted him from serving as pharmacist-in-charge for twenty-four months. In its subsequent order, however, the board accepted the petitioner's defense to the improper diversion charges. Noting the "volume and variety of record keeping [*sic*] violations," as well as testimony in which the petitioner "openly dismissed the importance of accurate record keeping [*sic*]," the board found him unfit to act as pharmacist-in-charge, restricted him from serving in that capacity indefinitely, and imposed a fine of $1,000. Unlike the board's first order, its second order permits the petitioner to practice pharmacy and allows him to petition the board at any time to lift the restriction upon a showing that he is capable of assuming the duties of a pharmacist-in-charge. Unconvinced that the second penalty is more severe than the first, *cf. Riblet Tramway Co. v. Stickney*, 129 N.H. 140, 147, 523 A.2d 107, 111 (1987) (encumbering right to work in chosen field not as serious as complete foreclosure), we hold that the second sanction was not an abuse of discretion or violative of the constitution.

Upon review of the record, we conclude that the petitioner's remaining arguments are either meritless and warrant no further discussion, *see Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993), or not supported by developed legal argument and will not be addressed, *see Douglas v. Douglas*, 143 N.H. 419, 429, 728 A.2d 215, 222 (1999).

*Affirmed.*

All concurred.