Department of Labor
No. 2008-111

## APPEAL OF DAN'S CITY AUTO BODY
### (New Hampshire Department of Labor)

Argued: September 16, 2008
Opinion Issued: October 31, 2008

*Walker & Buchholz, P.A.*, of Manchester (*Kevin E. Buchholz* on the brief and orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Anthony I. Blenkinsop*, senior assistant attorney general, on the brief and orally), for the State.

DUGGAN, J. The petitioner, Dan's City Auto Body (Dan's City), appeals an order of the Penalty Appeals Board (PAB) of the New Hampshire Department of Labor (NHDOL), which imposed a penalty of $20,000 for 125 violations of New Hampshire labor laws. We hold that the evidence was insufficient to support 105 of the cited violations, but was sufficient to support the other twenty. Accordingly, we reverse in part and affirm in part.

The record supports the following relevant facts. The NHDOL conducted an inspection of Dan's City from February 28, 2007, until March 5, 2007. Two inspectors recorded a total of 994 violations. Their report contains the text of the statutes and brief descriptions summarizing the violations. The inspectors attached a list of employees and their dates of hire, as well as a list of thirteen payroll deductions for the repayment of outstanding loans or advances made to employees.

The report cited four categories of violations. First, Dan's City was cited for 869 violations of RSA 275-A:4-a (1999) for not keeping on file employees' proof of citizenship or authorization to work within the United States. The number of violations appears to represent one per day per employee from time of hire until the inspection date. Second, the inspectors cited seven violations of RSA 275:49 (Supp. 2007) and New Hampshire Administrative Rules, Lab 803.04 for not notifying employees in writing as to their rate, date and place of pay. Third, the inspectors found 104 violations, one per week, of RSA 279:27 (1999) for failure to keep a true and accurate record of hours worked by employees performing towing on evenings and weekends, for alterations of time cards without employee signature, and for

difficulty reconciling the time "flat rate" employees worked with wages paid. Fourth, the inspectors cited fourteen violations of RSA 275:48 (Supp. 2007) for deductions made from employees' wages to repay loans or advances without written authorization on file. Only thirteen violations, however, were documented in the addendum to the report.

After the inspection, the NHDOL sent Dan's City a summary of its findings and notification of a fine totaling $100,450. Dan Genest, owner of Dan's City, disputed the violations and requested a hearing. At the hearing, Dan's City offered testimony claiming that, because of the many aspects of running a business, it was often hard to comply with all of the laws, particularly in relation to separate pay systems for different types of tasks. Genest testified that employees had difficulty filling out their time cards regularly and that he did give loans to employees and deduct repayments from paychecks. He contested, however, that he was required to keep on file proof of citizenship or work authorization after making the initial verification that his employees were authorized to work in the United States.

The hearing officer issued a written decision and order. Based upon the testimony and inspection report, he found that the violations did occur and imposed a $20,000 civil penalty for 994 violations. The hearing officer's report, however, did not set forth any facts beyond the conclusory statements in the inspectors' report. Dan's City appealed the hearing officer's decision and requested a *de novo* hearing before the PAB.

At the *de novo* hearing, Dan's City introduced testimony from Genest and another employee. They testified about the business practices of Dan's City and its efforts to comply with all applicable regulations. Genest admitted that past practices had, at times, violated New Hampshire labor laws, but did not testify specifically as to those instances in the inspectors' report. The NHDOL representative, appearing on behalf of the State, focused her cross-examination of Genest on seven-year-old violations that had resulted in a fine back in 2000. The NHDOL representative then reiterated portions of the inspection report, but did not call any witnesses. The PAB treated her remarks as "the State's closing." Dan's City then gave its closing statement, arguing that the State had failed to put forth sufficient evidence to justify a fine.

In its decision, the PAB summarized the hearing, including Genest's testimony and what it considered to be the testimony of the NHDOL representative. The decision included no findings of fact apart from its summary of the hearing. On that basis, the PAB dismissed the 869 allegations regarding employment of illegal aliens. The PAB imposed a total fine of $5,000 for all seven violations of RSA 275:49, a total fine of $1,000 for

all 104 violations of RSA 279:27, and a total fine of $14,000 ($1,000 each) for all fourteen violations of RSA 275:48. Dan's City appeals that decision to this court.

On appeal, Dan's City makes two sets of arguments, one relating to the sufficiency of the evidence, and the other to the sufficiency of the process used before the PAB. Regarding the sufficiency of the process, Dan's City argues that the PAB erred: in requiring it to present its case first; in not giving Dan's City the opportunity to cross-examine what the PAB later described as the NHDOL representative's "testimony," as opposed to closing argument; in not properly admitting evidence, including the inspectors' report; and in considering past violations of Dan's City in the imposition of the fine in this case. Because we agree with the State that these issues were not preserved for our consideration, we do not reach their merits.

As to the sufficiency of the evidence issues, Dan's City argues that the State failed to present any evidence upon which the PAB could base its decision. Dan's City argues that the conclusory statements in the inspectors' report reiterated in the PAB decision are insufficient to support the violations found.

Our review of the PAB is governed by RSA 273:11-d, IV (1999). The statute provides:

> The court shall not substitute its judgment for that of the board as to the weight of the evidence on questions of fact. The court shall reverse or modify the decision of the board, or remand the case for further proceedings, as determined by the court, only if the substantial rights of the appellant had been prejudiced because the administrative findings, inferences, or conclusions are:
>
> (a) In violation of constitutional or statutory provisions;
> (b) In excess of statutory authority;
> (c) Made upon unlawful procedures;
> (d) Clearly erroneous in view of the substantial evidence on the whole record; or
> (e) Affected by other error of law.

> Otherwise the court shall affirm the board's decision.

RSA 273:11-d, IV.

The State argues that Genest's admissions during the hearing, combined with the inspection report and its addenda, were sufficient evidence to support the PAB's conclusions. The State argues that the PAB was "not

bound by the strict technical rules of evidence governing court proceedings." *N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 340 (1966). As such, the State argues that the PAB was free to look at the informal information presented to it through the NHDOL representative's testimony as well as the inspection report, which were sufficient to support its conclusion.

■ The State is correct in pointing out that the PAB is not bound by the rules of evidence. *See* RSA 273:11-c, II (1999); *see also Appeal of Morgan*, 144 N.H. 44, 55 (1999); *N.H. Milk Dealers' Ass'n*, 107 N.H. at 340. The absence of such evidentiary rules, however, does not permit a finding in the absence of supporting facts. The State is also correct that we are not to substitute our judgment of the facts for that of the PAB. *See* RSA 273:11-d, IV. But, as we have said before, "Although the board is free to weigh the validity of the evidence presented as it deems appropriate, such weighing must be done in the context of the evidence presented." *Appeal of Rockingham County Sheriff's Dep't*, 144 N.H. 194, 196 (1999).

We now examine each category of violation to determine whether the evidence was sufficient. Because the PAB dismissed the 869 allegations in the first category (RSA 275-A:4-a), we need not address them here.

■ In the portion of the report pertaining to the third category of violations under RSA 279:27, the inspectors stated:

> The employer failed to keep a true and accurate record of hours worked by employees. Specifically;

> 52 violations cited as the employer did not keep records of hours worked by employees performing towing evenings and weekends. Employees were paid commission only for these duties.

> 52 violations cited as employee time records for other hours worked showed additions and changes to those records, without employee signatures or initials.

> Records showed indications of lunch hours not being taken but time possibly being deducted for those periods. The employer's rounding system was erratic, and unable to determine if employees were in fact not paid those hours.

> Employer also had one or more employees on "flat rate" and the time records could not be reconciled with the wages paid.

> Due to inadequate or non-existent records, no wage adjustment is possible at this time for either set of violation set [*sic*].

The report, however, provides no further details of the 104 violations. The State points out that Genest testified that his employees had trouble filling out their time cards every day and that he paid a flat rate or commission to some workers. These admissions, however, do not establish that there were 104 specific violations of RSA 279:27. To prove these violations at the PAB hearing, the State was required to produce evidence that would tend to support the actual commission of specific violations. Missing from the inspectors' report is any reference to a specific employee, specific days or specific times when records were not kept. Thus, the findings as to those 104 violations were clearly erroneous in view of the substantial evidence on the whole record. RSA 273:11-d, IV(d).

█ By contrast, there are specific references in the report for seven violations in the second category and thirteen of the fourteen violations in the fourth. As to RSA 275:49 and Lab 803.04, the inspectors wrote:

> The employer did not notify employees in writing as to their rate of pay, day and place of payment etc. as required by this section. At the time this inspection [*sic*] the employer had 7 employees on the last payroll (pp ending 2/18/07) submitted for this inspection.

The inspectors also attached an addendum that lists the seven employees and when each was hired.

█ As for violations in the fourth category, RSA 275:48, the inspectors' report provides:

> The employer's records indicate that on at least 14 occasions deductions were made from employee's [*sic*] wages for loans, advance wage payments or other purposes, without proper documentation on file. No wage adjustment deemed necessary at this time.

The inspectors attached a list to the report detailing thirteen specific unauthorized deductions, including who was involved, when each occurred and the amount deducted. Although witnesses for Dan's City disputed the violations in both categories, it was the task of the PAB to weigh the evidence. We therefore find sufficient evidence in the record to warrant the PAB finding of seven violations of RSA 275:49 and Lab 803.04, as well as thirteen of the fourteen violations of RSA 275:48.

The State argues that, in the instance of reversal, this case should be remanded to the PAB for further proceedings so that the PAB has another opportunity to adjudicate the violations, including hearing new evidence.

Dan's City, citing *City of Rochester v. Smith*, 121 N.H. 184 (1981), argues that remand for new proceedings is not the proper remedy where the record lacks sufficient evidence.

■ Where, as here, the State failed to meet its burden of proof, we hold that the proper remedy is dismissal. This is not a case in which the PAB erred only by failing to make specific findings of fact. *See, e.g., Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 759-60 (1980) (remand appropriate when board refused to make findings but could have); *Trustees of Lexington Realty Trust v. Concord*, 115 N.H. 131, 134 (1975) (lack of findings in tax abatement case required remand when facts may or may not have supported the outcome). Rather, this is a case in which there was insufficient evidence to support part of the PAB's decision. *See Rockingham County Sheriff's Dep't*, 144 N.H. at 197-98 (no remand if the board's ruling is unsupported by the evidence). Where there is insufficient evidence to support an administrative decision, the State does not get a "second bite at the apple."

In sum, because we find that there was insufficient evidence to support the PAB's decision with regard to the 104 violations of RSA 279:27 and one of the fourteen violations of RSA 275:48, we reverse those violations. The record does, however, support thirteen violations of RSA 275:48 and seven violations of RSA 275:49, and we therefore affirm the PAB's penalty assessment of $18,000 for those violations.

*Affirmed in part; reversed in part.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.